BASE BILLETING FUND, LAUGHLIN AIR FORCE BASE, and the Aetna Casualty and Surety Company, Petitioners,

v.

Manuela G. HERNANDEZ and Director, Office of Workers' Compensation Programs, Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

Manuela G. HERNANDEZ, Respondent.

Nos. 78-1841, 78-1867

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Alfred W. Offer, San Antonio, Tex., for Base Billeting Fund and others.

Carin Ann Clauss, Sol., Laurie M. Streeter, Associate Sol., Linda L. Carroll, Atty., U. S. Dept. of Labor, Washington, D.C., James T. Smith, Associate Deputy Commissioner, U. S. Dept. of Labor, Office of Workers' Compensation Programs, Galveston, Tex., Ralph M. Hartman, Director, Office of Workers' Compensation Programs, U. S. Dept. of Labor, Washington, D.C., for Director, Office of Workers' Compensation Programs.

Mike V. Gonzalez, Del Rio, Tex., for Hernandez.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

PER CURIAM:

Manuela G. Hernandez was a maid at the Laughlin Air Force Base in Texas. On August 31, 1971, while she was working, she fell and was injured. She was given emergency treatment at the base and then cared for by a private physician. She did not return to work for more than a month, and when she did return, she complained of neck pain and blurred vision. Two years later, on December 23, 1973, Mrs. Hernandez's physician advised her employer that the pain was chronic and that it was related to her 1971 injury. A month later Mrs. Hernandez was told that her employment would be terminated because of her condition. On February 15, 1974, she lost her job, and she has not worked since.

Mrs. Hernandez applied for disability compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. After a formal hearing, an administrative law judge held that she had become permanently totally disabled on February 15, 1974, and he ordered that she be paid compensation. Mrs. Hernandez's employer, the Base Billeting Fund, and its insurance carrier appealed this award to the Benefits Review Board. *See* 33 U.S.C. § 921(b)(3). The Board affirmed the award. The employer and the Director of the Office of Workers' Compensation Programs both appeal from the Board's decision. The Director raises only one issue. That issue is one of several raised by the employer. We remand to the Board for further proceedings on this issue; in all other respects we affirm the Board's order.

The one issue raised by the Director, on which issue we remand, arises under the 1972 amendments to the Longshoremen's Act. Those amendments, among other things, provided new maximum and minimum benefit levels and, to deal with inflation, required that benefits be adjusted annually. All recipients were covered by these changes, but different provisions applied depending upon whether a recipient was injured and permanently totally disabled before the effective date of the amendments or injured and disabled after that date. The problem in this case, of course, is that Mrs. Hernandez was injured in 1971, before the amendments, but did not become permanently totally disabled until 1974, after the amendments became effective. The Board, clarifying the administrative law judge's decision, treated Mrs. Hernandez as if both her injury and her disability had occurred after the amendments. Specifically, it held that 33 U.S.C. §§ 906(c) and 910(f) applied to her case. The employer and the Director argue that § 910(h)(1) & (3), the provisions that would apply to an employee injured and disabled before 1972, control.

In this case, the choice between §§ 906(c) & 910(f), on the one hand, and § 910(h)(1) & (3), on the other, appears to affect principally the employer and its insurance carrier, not the employee. The employer and carrier must pay all of the benefits awarded under §§ 906(c) and 910(f); awards under

§ 910(h)(1) and (3) are paid from congressional appropriations and from a special fund set up by the 1972 amendments. See 33 U.S.C. §§ 910(h)(2), 944. According to the legislative history the reason for this difference is that insurers would be able to adjust their rates to take account of the higher compensation levels mandated by §§ 906 and 910(f) for injuries occurring after the amendments, but § 910(h) increased compensation for injuries which had already occurred, and insurers could not have provided for these increases when they set their rates. See 118 Cong.Rec. 36385, 36386 (1972), *quoted in Landrum v. Air America*, 534 F.2d 67, 70 (5th Cir. 1976).

The language of these sections gives us little help in choosing among them.[1] Neither does the Benefit Review Board's opinion. Not only did the Board not explain why it had chosen §§ 906(c) and 910(f) instead of § 910(h)(1) & (3), but in an earlier case, *Silberstein v. Service Printing Co.*, 2 B.R.B.S. 143 (August 14, 1975), the Board had held that § 910(h)(1) & (3) applied to a recipient who, like Mrs. Hernandez, was injured before the effective date of the 1972 amendments and became permanently totally disabled afterwards. The Board's opinion in Mrs. Hernandez's case neither cites nor alludes to *Silberstein*. According to the Director of the Office of Workers' Compensation Programs, the Board did not hear argument on the question of whether the principle of *Silberstein* is correct.

The Board's failure to explain its decision, *see generally S.E.C. v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), and the apparent inconsistency of its decisions persuade us to remand this case so that the Board can reconsider its decision on this point, explain itself more fully, and resolve whatever inconsistency there is with *Silberstein*. The Board knows better than we how insurance carriers calculate their rates, and it is likely to have insights into the equity of different sorts of risk-pooling. *See Columbia Gas Transmission Corp. v. FPC*, 174 U.S.App.D.C. 204, 207, 530 F.2d 1056, 1059 (1976) (even on issue of law, reviewing court should defer more readily to agency view informed by "technical knowledge of industry conditions and practices"); *Natural Resources Defense Council, Inc. v. Train*, 166 U.S.App.D.C. 312, 326, 510 F.2d 692, 706 (1975). In addition, the provisions at issue here are part of a complex and interlocking statutory scheme which the Board is, to a degree, charged with administering. *See generally* 33 U.S.C. § 921(b). One reason we require litigants to exhaust administrative remedies is that we believe our decisions will be better if we have before us the agency's thorough consideration of the matter. *See Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); *McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 23

---

1. Section 910(f), which provides for annual adjustments, applies to "benefits payable for permanent total disability or death arising out of injuries sustained after the date of enactment of [the 1972 Amendments]." Section 910(h)(3), also providing for annual adjustment, applies to "injur[ies] which resulted in permanent total disability or death which occurred prior to the date of enactment." If these sections were both read literally Mrs. Hernandez would apparently fall in between and receive no annual adjustment; no one contends for that result, which would be plainly contrary to Congress's intention. Section 910(f) does seem to exclude Mrs. Hernandez more firmly than § 910(h)(3), but § 910(h)(3) is scarcely clear enough to permit us to resolve the issue simply by reading the statute.

Section 906(c), specifying maximum and minimum benefits, is governed by the general provision giving "thirty days after the date of enactment"—thirty days after October 27, 1972 —as the effective date. Pub.L. No. 92–576, 86 Stat. 1265, October 27, 1972, § 22. Section 910(h)(1) requires benefits resulting from "total permanent disability or death which commenced or occurred prior to enactment of [these amendments]" to be adjusted one time, apparently to bring them into line with benefits for post-amendment disability. Sections 910(h)(1) and (3) are the provisions entitling the employer to draw on the special fund, *see* 33 U.S.C. § 910(h)(2). It would be odd for § 910(h)(3) annual adjustments to be paid out of the fund while the higher initial benefit levels are not—as far as an insurer's ability to anticipate the payments in setting its rates is concerned, there seems to be no difference between them—yet that is what a literal reading of (h)(1) and (h)(3) apparently requires. For these reasons we believe the text of the statutes is not dispositive.

L.Ed.2d 194 (1969). For the same reason, we remand this case for a more full discussion and explanation of which statutory provisions should apply. *See Aberdeen & Rockfish Railroad Co. v. United States*, 565 F.2d 327, 334–35 (5th Cir. 1977), *rev'd and remanded on other grounds sub nom. Long Island Railroad Co. v. Aberdeen & Rockfish Railroad Co.*, —— U.S. ——, 99 S.Ct. 46, 58 L.Ed.2d 1 (1978). ("The reviewing court . . . must have at least, by clear implication, the agency's construction of the statute it is applying, so that the court may be aided in its own construction of that law.")

■■ If the Board's resolution of these issues of law is likely to be helpful to us, the Board's and the administrative law judge's decisions on questions of fact are more nearly authoritative. Specifically, the Board must uphold the ALJ's findings of fact if they are "supported by substantial evidence in the record considered as a whole," 33 U.S.C. § 921(b)(3); and when we review the Board's decisions we are confined to correcting errors of law and to ensuring that the Board was properly deferential to the administrative law judge. *See, e. g., Presley v. Tinsley Maintenance Service*, 529 F.2d 433, 436 (5th Cir. 1976). The other issues raised by the employer concern points on which the Board affirmed the ALJ's conclusions, and we have no difficulty affirming the Board. First, the employer says that Mrs. Hernandez cannot recover because she did not file a claim within a year of her injury. *See* 33 U.S.C. § 913(a). The employer acknowledges that this period does not begin to run until the employer has reported the injury as required by 33 U.S.C. § 930(a). *See* 33 U.S.C. § 930(f). The employer did not report Mrs. Hernandez's injury until August 17, 1973, but Mrs. Hernandez did not file a standard claim form until more than a year later, on January 27, 1975. Nonetheless, the ALJ and the Board agreed that her claim was timely filed. They relied on two documents. One is a letter, dated January 23, 1973—within the one year period—in which the employer wrote to Mrs. Hernandez: "Your decision on group insurance, is a

matter entirely separate from your claim for workmen's compensation, which is on file and being brought up to date." Brief of Petitioner Base Billeting Fund, at 6. The ALJ held, and the Board agreed, that this statement estopped the employer from denying that Mrs. Hernandez's claim had been filed by that date. The other document is a form used for claiming benefits under a statute inapplicable here, the Federal Employees Compensation Act. This form, over the name of Mrs. Hernandez's supervisor, was filled out and filed on the date of her injury. The ALJ and the Board concluded that this, too, amply put the employer on notice of Mrs. Hernandez's injury. We cannot, and should not, disturb these conclusions by the ALJ and the Board. They are better acquainted with the procedures of government agency employers and their insurance carriers, and therefore in a better position to decide what sort of filing is sufficient to protect the employers' and carriers' interests. More importantly, the ALJ and the Board have a better sense than we of the informality with which workers' compensation programs should be operated; they are more likely to know the extent to which it is reasonable to expect an employee to thread her. way through a bureaucratic maze of complicated forms and filing dates.

■ Similar considerations impel us to reject the employer's argument that Mrs. Hernandez is not entitled to certain medical expenses arising out of treatment provided by her private physician. The employer cites 33 U.S.C. § 907(d), which provides:

An employee shall not be entitled to recover any amount expended by him for medical or other treatment or services unless he shall have requested the employer to furnish such treatment or services, or to authorize provision of medical or surgical services by the physician selected by the employee, and the employer shall have refused or neglected to do so, or unless the nature of the injury required such treatment and services and the employer or his superintendent or

foreman having knowledge of such injury shall have neglected to provide or authorize the same.

The ALJ rejected the employer's argument because, he said, the employer "knew or should have known, that a military hospital is not staffed to provide other than emergency care to ineligible civilian personnel. [The employer] should have taken the initiative to provide follow-up care." App. I at 90. Moreover, the ALJ said, the Base hospital transmitted some of Mrs. Hernandez's records to her private physician; this suggests that it acquiesced in her choice of a physician. Plainly, we are in no position to dispute these conclusions.

█ Finally, the employer urges that Mrs. Hernandez was not totally disabled as a result of her accident. It says first that the disability which led to her discharge was caused not by her accident but by an unrelated medical condition. On this point the doctors disagreed among themselves, and the ALJ and Board evaluated their respective opinions and made a reasoned choice among them. Such an evaluation and choice have long been considered the province of the administrative factfinder. *See generally Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028, 1036 (1947). The employer also emphasizes, however, that none of the doctors expressly stated that Mrs. Hernandez was totally disabled. But as the Board and the ALJ pointed out, disability is not a purely medical notion. *See, e. g., Watson v. Gulf Stevedore Corp.*, 400 F.2d 649, 653 (5th Cir. 1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1471, 22 L.Ed.2d 755 (1969). Here the employer discharged Mrs. Hernandez because of her medical problems and partly on the basis of her doctor's report. As the ALJ held, the employer did not show that other employment was available to Mrs. Hernandez. It follows, under our cases, that the ALJ's and Board's conclusion that she was totally disabled must be sustained. *See, e. g. Diamond M. Drilling Co. v. Marshall*, 577 F.2d 1003, 1105–06 (5th Cir. 1978).

We remand the case to the Benefits Review Board so that it may reconsider its holding that § 906(c) and § 910(f), not § 910(h)(1) & (3), apply. In other respects the Board's decision is affirmed.

AFFIRMED IN PART; REMANDED IN PART.