NEW ORLEANS (GULFWIDE) STEVE-
DORES and Employers National Insur-
ance Company, Petitioners,

v.

Edward TURNER, and Director, Office of
Workers' Compensation Programs, Unit-
ed States Department of Labor, Respon-
dents.

No. 77–1697.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Nov. 20, 1981.

* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

Thomas W. Thorne, Jr., New Orleans, La., for petitioners.

Joshua T. Gillelan, II, Atty., U. S. Dept. of Labor, Washington, D. C., Gerald J. Leydecker, New Orleans, La., for respondents.

Before BROWN, COLEMAN and GEE, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case, arising under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C.A. § 901 *et seq.*, provides us with an opportunity to clarify an issue we left open in our recent opinion in *Odom Construction Co. v. United States Department of Labor*, 622 F.2d 110 (5th Cir. 1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981). In that case we reaffirmed our position that the burden rests on an employer contesting an award for permanent total disability under LHWCA to show the availability of other jobs that the claimant is capable of performing but left open the nature of the showing required. We now answer that question and define what is necessary to establish job availability to the claimant. Because we find that the Administrative Law Judge (ALJ) hearing the claim imposed too stringent a standard on the employer, we reverse and remand this case for further hearings to determine if the employer can satisfy the correct burden of proof.

### How It All Began

Claimant Edward Turner, a freight handler for New Orleans (Gulfwide) Stevedores (NOS), injured his right knee on October 1, 1973, while securing a stack of lumber on a railroad flatcar. This injury was initially

diagnosed as a knee strain and was treated conservatively by several doctors to whom Turner was referred to by NOS. Turner returned to work as a freight handler in January of 1974 and continued working from time to time until the end of June 1974, during which time he experienced continual discomfort from the knee, including pain and swelling. On June 28, 1974, Dr. Matko Milicic, Turner's private orthopedic physician, performed knee surgery which revealed a torn medial menicus as well as evidence of pre-existing degenerative arthritis which was aggravated by the injury.

Turner received post-surgery treatment from Dr. Milicic but continued to experience swelling, pain and weakness in the right knee, despite physical therapy. One year after surgery, the doctor indicated that Turner had some atrophy of the muscles, a moderate limp, and might at some point in the future require further surgery. He also recommended on September 15, 1975 that Turner return to gainful employment of a type less strenuous than that of a freight handler. Dr. Russell Grunsten, an orthopedic surgeon who examined Turner on August 8, 1975 and October 2, 1975 on behalf of NOS, also recommended that Turner return to work, on a trial basis, as a freight handler. Turner, however, neither sought nor obtained employment of any type from the time of his surgery.

### Longshoremen Act Proceedings

#### Turner's Story

Pursuant to LHWCA, Turner filed a claim for disability benefits for which a formal hearing before an ALJ commenced on October 20, 1975. The evidence adduced at the hearing consisted of objective medical facts, diagnoses of examining physicians, subjective evidence of pain and disability as testified to by the claimant, and the claimant's age, education and work history.

The evidence showed that Turner was fifty-two years old at the time of his injury. He had an eighth or ninth grade education in day school and had subsequently attended night school for two or three years. Although he had not finished high school, Turner considered his schooling to amount to an eleventh grade education. During World War II, Turner worked as a longshore hatch foreman in the military. Both prior and subsequent to his military service, he had worked in a clothing shop, as a salesman, for ten or eleven or perhaps thirteen or fourteen years. In addition, following his discharge from the service, Turner had enrolled in, but did not complete, a course in tailoring. When the store for which he worked went out of business, Turner went to work on the waterfront, as a freight handler, at which job he worked for 18 years preceeding his injury.

Turner testified that after the injury but prior to his surgery, he worked as a freight handler from about the end of January 1974 until the end of June 1974, when work was available and when his knee was not swollen. Testimony was also given of continued difficulty in walking, especially on uneven pavement and getting on and off of buses. Several employers refused to hire him because of his injury. Following surgery, Turner did not seek work and testified that he did not know who would hire him at his age and in his condition, but that he would be willing to work if work were available. He indicated reluctance to accept employment outside his craft, fearing he would forfeit fringe benefits accrued from his membership in the Freight Handler's Union.

#### The Doctors Say

The medical evidence from three doctors indicated that the knee injury was permanent. Dr. Milicic testified that he believed Turner should be able to return to work of a sedentary type, which did not involve prolonged walking, or standing, heavy lifting, or jumping. He estimated the disability to the whole right leg to be 25%, with the possibility that the knee could worsen. Dr. Brown, also employed by the claimant, estimated the injury as approximately 33% partial disability to the knee, allowing Turner to engage in employment that did not require climbing, walking, or standing. The

physician for NOS, Dr. Grunsten, estimated permanent partial disability to the right lower extremity at 15% to 20% and recommended that Turner undertake a trial work period, including as a freight handler, to determine the effect of such activity on the knee.

### The Hired [Gun] Expert

The testimony of most interest is that of a Department of Labor "rehabilitation expert", David Firebaugh, called not by the Director but by NOS to testify.[1] Firebaugh was employed as a vocational rehabilitation expert for the Department of Labor, Office of Workmen's Compensation Programs, serving in that capacity for claims under both LHWCA and Federal Employees' Compensation Act.[2] He testified about jobs available within the New Orleans area for which he believed Turner would be qualified, including employment with the federal government, Louisiana State Civil Service, and in the private sector. According to him, of the jobs available from the State Civil Service, Turner "could perform" positions as a bridge tender, lock operator, forest tower man, elevator operator, positions paying less than Turner's previous salary as a freight handler.[3] Approached from the standpoint of available federal civil service, Turner "would be eligible for" file clerk, elevator operator, watchman and guard, and with some training, draftsman and clerical typist.[4] Within private industry, the witness found jobs available and in many cases want ads in the local newspaper for service station attendant (paying minimum wage), flower seller, catering truck driver, parking lot attendant, guard, watchman, retail sales, hotel and motel clerks, ragman for pool hall, debit book, and private employment counselor. With training, Turner could do drafting, light welding, and orthodontic prosthetics.

The expert, Firebaugh, indicated that Turner's age would be no stumbling block since "[w]e have equal employment now . . . ." Upon cross-examination, Firebaugh admitted no psychological tests had been conducted and no conferences on interest had been held with Turner. Firebaugh assumed Turner to be of average intelligence, relying on the claim examiner's statement that Turner was "a very articulate fellow." In fact, Firebaugh admitted that if he had talked with Turner previously he would

1. There was some discussion concerning who had requested Firebaugh's presence.

 Counsel for Turner: I don't know why this man is here.

 Counsel for NOS: He is appearing as an expert witness on behalf of the Employer Carrier.

 Counsel for Turner: But he is telling us he is a representative of this Claimant, the Department of Labor, and that he is here today to help this man. Now, I finally find out he is a representative of the Employer National.

 Why didn't somebody tell me that a long time ago and save the court a lot of time?

 Counsel for NOS: He was called as a witness of the Employer Carrier. He wasn't a witness of the court. We tendered him as a witness to testify on behalf of the Employer Insurance Carrier.

2. At the hearing, Turner's counsel questioned Firebaugh's qualifications as an expert.

 Counsel for NOS: Do you have any objection to the witness' qualifications?

 Counsel for Turner: Well, I have objections, because I don't know, Your Honor, whether or not this gentleman would be qualified to testify in this particular case, because of the lack of practical experience in this area. Of course subject to that objection, that is the only objection I have.

 Counsel for NOS: Is the witness qualified as an expert in the field of Vocational Rehabilitation, Your Honor?

 The Judge: Well, he is hired by the department of labor as such, so I guess we have to take him as such. So I guess there is no say. And we will take him as such. And if there is any reason to find him as not, we will do that.

3. The pay scale for these jobs ranged from $350 to $450 per month at the time of the hearing, in 1975. This is substantially less than claimant's average weekly wage of $180.93 approximately two years before.

4. Counsel for NOS: Would he be qualified, if trained, to perform clerical typist job, secretarial type work?

 Witness: Yes, he would.

 Counsel for NOS: I take it there would be no discrimination because he is a male?

 Witness: If there was he could get on them real hard, and heavy.

 The pay range for these jobs was estimated at $6000 to $7500 per year.

have been able to narrow down possible jobs available.[5]

### The ALJ Decision

The ALJ issued an order awarding benefits, including compensation for total permanent disability from August 1975, the point at which medical testimony indicated maximum medical improvement from surgery, and making the following findings:

The Claimant has been working as a freight handler for about 18 years. He did not finish high school. He will need training for any new type of employment except a menial job paying the minimum wage which would be at a pay scale of $87.00 to $112.00 per week. He will have trouble with this knee for the rest of his life.

Claimant feels that he cannot return to his prior work. . . .

. . . .

Claimant's testimony that he is unable to perform the duties of a freight handler is supported by the medical testimony. Considering this limitation, as well as Claimant's age and education, it is apparent that his actual opportunity to obtain employment is severely restricted and will remain so restricted. The Carrier and [NOS] presented evidence pertaining to advertisements for jobs that the Claimant might be able to perform or, with additional training, probably could

perform. They did not show *any actual job offers* to the Claimant. The Claimant could have submitted an application for the jobs advertised and, thereby, compete with all other applicants for the jobs advertised.

In this situation, [NOS] has the burden of proving that an employee, who establishes that he is disabled from his regular employment, *has actual opportunities to obtain other suitable employment. . . .* I find that the Employer has failed to meet this burden.

. . . .

A careful review has been made of all the medical evidence in this case, and it leads to the conclusion that the Claimant is not capable of performing any kind of work for which he is trained by experience or otherwise. The Claimant's physical condition is in the process of stagnation or deterioration, instead of improvement, to that extent it is increasingly difficult for the Claimant to care for his own personal needs (emphasis supplied, citations omitted).

NOS (and its compensation insurer) appealed the ALJ decision to the Benefits Review Board[6] contesting both jurisdiction[7] and the finding of total permanent disability. NOS argued that since Turner could return to work his disability was not total under 33 U.S.C.A. § 908(a) but rather partial under 33 U.S.C.A. § 908(c).[8] Finding

---

**5.** Witness: There probably would be a number of training areas the man [Turner] could go into. If I had a week or so more notice I would have contacted Mr. Turner and talked to him, and perhaps gotten a little testimony. I certainly would have.
 Counsel for Turner: Yes, sir. And you would have been more capable to come to court today?
 Witness: And I wouldn't have read all this list of stuff here.
 Counsel for Turner: You would have been able to give us a more valid observation in your field of expertise on your opinions; wouldn't you?
 Witness: I could have narrowed it down.

**6.** Under LHWCA, primary responsibility is on the ALJ to make findings of fact and to determine the validity of a claim. An appeal of the ALJ's decision may be brought to the BRB. 33 U.S.C.A. § 921. The scope of review by the

BRB is limited and does not consist of making independent findings of fact. "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C.A. § 921(b)(3).

**7.** NOS originally contested jurisdiction of Turner's injury under LHWCA. NOS abandoned this contention in light of *P. C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979).

**8.** The distinction between total and partial disability is substantial in terms of the amount of benefits that may be awarded. If Turner is totally disabled, he would receive two-thirds of his pre-injury salary for the remainder of his life. 33 U.S.C.A. § 908(a). If partially disabled, Turner's award would be determined under § 908(c) which provides a schedule of bene-

substantial evidence to support the determination of disability and that it was in accordance with law, the Board affirmed the ALJ's award, specifically stating that "the administrative law judge concluded that the Claimant's actual opportunity to obtain employment was severely restricted and will remain so restricted; also, [NOS] did not show that advertised jobs were actually available to the claimant."

NOS (and its insurer), appealing the decision of the BRB, contend that Turner is not totally disabled but rather only permanently *partially* disabled, and assert that the ALJ erred as a matter of law and fact in finding that the employer had failed to meet its burden of proving that actual opportunities for other suitable employment existed.

### A Limited Review

■■■ A party aggrieved by an order of the BRB may under the LHWCA seek review by the appropriate circuit court. In reviewing BRB decisions, 33 U.S.C.A. § 921(c), this Court is limited to considering errors of law, making certain that the BRB adhered to its statutory standard of review of factual determinations, that is whether the ALJ's findings of fact are supported by substantial evidence and consistent with the law. *Alford v. American Bridge Division, U. S. Steel Corp.*, 642 F.2d 807, 809 (5th Cir.), *modified in part*, 655 F.2d 86 (5th Cir. 1981); *Hole v. Miami Shipyards Corp.*, 640 F.2d 769, 771–72 (5th Cir. 1981); *Hullinghorst Industries, Inc. v. Carroll*, 650 F.2d 750, 753 (5th Cir. 1981); *Fulks v. Avondale Shipyards, Inc.*, 637 F.2d 1008, 1011 (5th Cir. 1981); *Mississippi Coast Marine v. Bosarge*, 637 F.2d 994, 996 (5th Cir. 1981), *modified in part*, 657 F.2d 665 (5th Cir. 1981); *Odom Construction Co. v. U. S. Department of Labor*, 622 F.2d 110, 115 (5th Cir. 1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981); *Avondale Shipyards, Inc. v. Vinson*, 623 F.2d 1117, 1119 n.1 (5th Cir. 1980);[9] *Army & Air Force Exchange Service v. Greenwood*, 585 F.2d 791, 794–95 (5th Cir. 1978); *Presley v. Tinsley Maintenance Service*, 529 F.2d 433, 436 (5th Cir. 1976). The ALJ is entitled to deference and his selection of reasonable conflicting factual inferences is conclusive upon the Board if supported by the evidence and not inconsistent with the law. *Hullinghorst Industries, Inc. v. Carroll, supra; Alford v. American Bridge Division, U. S. Steel Corp., supra; Presley v. Tinsley Maintenance Service, supra.*

### What is Disability?

■■■ Disability under LHWCA is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C.A. § 902(10). No standard is provided in the Act to determine the extent of disability and to distinguish between total permanent, permanent partial, temporary total, and temporary partial disability. The statutory scheme does provide for different amounts of compensation based on the extent and permanence of the disability.[10] 33 U.S.C.A. § 908(a), (c). The degree of dis-

fits for certain specifically identified injuries, limiting the two-thirds of the pre-injury wages to a finite number of weeks. Where a specific injury is not listed in the schedule, § 908(c)(21) provides in "all other cases" for an award equal to two-thirds of the difference between pre-injury average wages and post-injury wage-earning capacity.

We do not here decide whether Turner's disability, if partial, would fall within the schedule or be subject to § 908(c)(21). We note, however, that the Supreme Court has determined that an award for an injury within the schedule of fixed benefits is restricted to the statutory schedule and the claimant is not entitled to elect a larger award under the formula of § 908(c)(21). *See Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs*, 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980).

**9.** "When the court of appeals reviews decisions of the BRB, then, its only function is to correct errors of law and to determine if the BRB has adhered to its proper scope of review—*i. e.*, has the Board deferred to the ALJ's fact-finding or has it undertaken de novo review and substituted its views for the ALJ's." 623 F.2d at 1119 n.1.

**10.** *See* note 8, *supra*.

ability is determined not only on the basis of physical condition but also on factors such as age, education, employment history, rehabilitative potential, and the availability of work that the claimant can do. *Odom Construction Co. v. U. S. Department of Labor*, 622 F.2d at 115; *Jacksonville Shipyards, Inc. v. Dugger*, 587 F.2d 197, 198 (5th Cir. 1979); *Army & Air Force Exchange Service v. Greenwood*, 585 F.2d at 796; *Diamond M. Drilling Co. v. Marshall*, 577 F.2d 1003, 1005–06 (5th Cir. 1978). Total disability may be economic as well as medical. *Todd Shipyards, Inc. v. Fraley*, 592 F.2d 805 (5th Cir. 1979); *Watson v. Gulf Stevedore Corp.*, 400 F.2d 649, 654 (5th Cir. 1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1471, 22 L.Ed.2d 755 (1969). It is therefore possible under LHWCA for an individual to be totally disabled "when physically capable of performing certain work but otherwise unable to secure that particular kind of work." *Diamond M. Drilling Co. v. Marshall*, 577 F.2d at 1006.

### Helpful Presumptions

### Shifting Sands (Presumption)

 Case law has established that LHWCA is to be liberally construed in favor of injured employees. *Voris v. Eikel*, 346 U.S. 328, 333, 98 L.Ed. 5, 10, 74 S.Ct. 88, 91, (1953); *Holcomb v. Robert W. Kirk & Associates, Inc.*, 5th Cir., 655 F.2d 589, 591–92; *Byrd v. Reederei*, 638 F.2d 1300, 1306 (5th Cir. 1981), en banc decision pending on another issue; *Texports Stevedore Co. v. Winchester*, 632 F.2d 504, 515 (5th Cir. 1980) (en banc); *Alabama Dry Dock & Shipbuilding Co. v. Kininess*, 554 F.2d 176, 177 (5th Cir. 1977), *cert. denied*, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 190 (1978). The Act itself contains a statutory presumption that in the absence of substantial evidence to the contrary, the claim is within the provisions of the Act. 33 U.S.C.A. § 920.[11] This presumption of coverage was first used in con-

nection with the issue of jurisdiction, but has been extended to include the nature and extent of the injury. *See Riley v. U. S. Industries/Federal Sheet Metal, Inc.*, 627 F.2d 455 (D.C.Cir. 1980), *cert. granted sub. nom., U. S. Industries/Federal Sheet Metal, Inc. v. Director, Office of Workers' Compensation Programs*, 450 U.S. 979, 101 S.Ct. 1512, 67 L.Ed.2d 813 (1981); *Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs*, 644 F.2d 827, 833 (9th Cir. 1981), *citing Strachan Shipping Co. v. Shea*, 406 F.2d 521, 522 (5th Cir.), *cert. denied*, 395 U.S. 921, 89 S.Ct. 1775, 23 L.Ed.2d 283 (1969).

 By combining the concept of disability as not merely physical with the statutory and case law presumption of coverage, the rule generally stated is that a claimant establishes a prima facie case of disability by showing he cannot perform his former job because of job-related injury. At that point, the burden then shifts to the employer to establish the availability of other jobs that the claimant could perform. *See Odom Construction Co. v. United States Department of Labor*, 622 F.2d at 115; *Base Billeting Fund, Laughlin Air Force Base v. Hernandez*, 588 F.2d 173, 178 (5th Cir. 1979); *McCabe v. Sun Shipbuilding and Dry Dock Co.*, 602 F.2d 59, 62 n.7 (3rd Cir. 1979); *Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Compensation Programs*, 592 F.2d 762, 764–65 (4th Cir. 1979).

### The Law Elsewhere

The nature of the employer's burden, that is, what constitutes the *availability* of other jobs that a claimant could perform, has been treated differently by the circuits. We find it helpful to trace the development in prior cases of this requirement.

The case most frequently cited for the proposition that the employer must point to *specific* jobs available to an injured claim-

---

11. § 920. Presumptions

In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—

(a) That the claim comes within the provisions of this chapter.

ant is *Perini Corp. v. Heyde*, 306 F.Supp. 1321 (D.R.I. 1969). In this case, claimant Reed, a laborer on a bridge construction job, injured his back. The District Court reviewed the decision of the Deputy Commissioner.[12] The medical testimony established that Reed was unable to perform his usual work but was able to do light duties. Reed testified that he was unable to find light work on the bridge construction, was unable to lift or bend, and was in constant discomfort and pain. He did work for less than one day for a gas station. "Other than return to Perini Corporation and the gas station, which was for only a few hours, he made no attempt to obtain light work nor did he place his name on any employment list or seek rehabilitation." 306 F.Supp. at 1326. The Commissioner's choice to believe Reed's testimony of incapacity and inability to find work was upheld by the District Court on the basis that doubts, including those which are factual, are to be resolved in favor of the employee. 306 F.Supp. at 1327, quoting *Friend v. Britton*, 220 F.2d 820, 821 (D.C.Cir.), *cert. denied*, 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 745 (1955). The District Court focused on the requirement that the Act be liberally construed. Reducing the argument to whether any light work was available to Reed, the court found that the employer failed to go forward with the evidence.

> When a man by reason of training, capacity and education is no longer able to find a job, then it is necessary for the employer to point out where those jobs are.
>
> . . . .
>
> In the case at bar, the testimony shows that the plaintiff, Perini Corporation, offered no such work to the claimant nor was any available elsewhere. There is nothing in the record to suggest that

work within the physical and intellectual powers of this claimant was available to him.

> The Plaintiff has failed to meet its burden of proof.

306 F.Supp. at 1329.

*Perini* was used as support in a Second Circuit opinion, *American Stevedores, Inc. v. Salzano*, 538 F.2d 933 (2nd Cir. 1976). The Court in *Salzano* found the claimant totally disabled since the employer had failed to show that any "light or sedentary work" was available for the claimant to perform.

The Fourth Circuit in *Newport News Shipbuilding and Dry Dock Co. v. Director, Office of Workers' Compensation Programs*, 592 F.2d 762 (4th Cir. 1979), adopted the rule of *Perini* that the employer must meet the burden of showing alternative employment. "Having shown such a disability, the claimant is entitled to an award under the Act unless the employer alleges that he is substantially and gainfully employable. Then the burden shifts to the employer, the proponent of a finding of *less* than total disability, to prove that alternative employment is available." 592 F.2d at 765. The Court, in defining what constitutes "actual opportunities to obtain other work", stated that, in accord with LHWCA's emphasis on disability as not purely physical but also economic, "[w]e think the employer must demonstrate that 'there [are] jobs available in the local economy which the claimant, considering his age, past experience and disability, [is] capable of performing'". 592 F.2d at 765, *citing Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968) (social security benefits case). The opinion, however, does not indicate what efforts the employer made to demonstrate that other employment opportunities were available to the claimant.[13]

---

**12.** Prior to the 1972 amendments, the Deputy Commissioner entered orders which were then reviewable by the District Court. Under the present statutory scheme, the original order is made by an ALJ, reviewed by the BRB, and then appeal may be taken to the Court of Appeals. 33 U.S.C.A. §§ 919, 921.

**13.** The employer in *Newport News* was contending that the *Perini* rule was not proper when considered in relation to the Administrative Procedure Act, 5 U.S.C.A. § 556(d). The Court rejected this argument and also found that the *Perini* rule was workable especially since the claimant would otherwise have the burden of proof on alternative employment, a burden of proving a negative fact. The burden

The First Circuit, in *Air America, Inc. v. Director, Office of Workers' Compensation Programs*, 597 F.2d 773 (1st Cir. 1979), set aside the order of the BRB which had found the claimant, a former pilot, totally disabled. The Court specifically rejected the BRB's holding that "once a claimant proves himself incapable of performing his prior employment, the employer can defeat the total disability claim only by a specific showing that suitable alternative jobs are presently available. . . . The Review Board reasoned that since claimant proved his inability to work as a pilot, and the Company did not meet its purported burden to show another job actually available to claimant which he could perform, the total disability claim should prevail." 597 F.2d at 778–79. The Court found that such burden was "too stringent a burden in the circumstances present".

> While some of the cited cases state the burden in broad terms, they must be read in light of their facts. So read, they do not support a mechanical rule, applicable in any and all circumstances, that the employer must always demonstrate the availability of an actual job opportunity whenever a claimant shows an inability to perform his previous work. Rather it is reasonable to require the employer to make such a strong showing when a claimant's inability to perform any available work seems probable, in light of claimant's physical condition and other circumstances—such as claimant's age, education, and work experience. The strength of the presumption of total disability, and hence the severity of the burden the employer must bear to overcome it, should reflect the reality of the situation.

597 F.2d at 779. The Court distinguished prior cases, including *Perini* and *Salzano*, on the basis that in those cases the claimants' medical impairments and job qualifications led to the assumption that suitable job prospects would be limited, if existent at all. In this case, the claimant, a pilot, was college-trained and possessed a broad range of skills and experience.

In contrast to the First Circuit's position is the stringent requirement for showing job availability applied by the Ninth Circuit in *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs*, 629 F.2d 1327 (9th Cir. 1980). In that case, the Court upheld the BRB's finding of total disability based on the employer's failure to meet its burden of showing available jobs that the claimant could perform. "[T]he employer must point to *specific* jobs that the claimant can perform." 629 F.2d at 1330 (emphasis in original, citation omitted). The employer argued that it could meet its burden by showing that the claimant could perform general "sedentary work." Bumble Bee also contended that it offered the claimant a security guard job for which he was physically fit, and that this offer met its burden of pointing to a specific job that the claimant could perform. The Court found that there was a dispute about the claimant's ability to perform the guard job. If *Bumble Bee* is interpreted to mean that the employer must prove that there are specific jobs that the claimant can perform and can secure, such that the employer becomes an employment agency, we reject such a standard.

### The Law in the Fifth

We turn now to our own cases dealing with the burden of establishing availability of jobs. In *Diamond M. Drilling Co. v. Marshall*, 577 F.2d 1003 (5th Cir. 1978), we affirmed the BRB's holding that an employee was permanently and totally disabled due to a heart condition arising from a heart attack sustained while performing former job duties. In that case, the claimant, though capable of performing sedentary work, had been unsuccessful in locat-

---

on the employer has also been described by the Fourth Circuit as requiring "the employer to prove the existence of a suitable job presently available to the claimant in the community in which he lives." *Haughton Elevator Co. v. Lewis*, 572 F.2d 447, 451 (4th Cir. 1978) (Winter, J., concurring). *See John T. Clark & Son of Maryland, Inc. v. Benefits Review Board*, 621 F.2d 93, 95–96 n.5 (4th Cir. 1980).

ing any other job. We specifically mentioned that the Texas Rehabilitation Commission had been unable to find the claimant a job because of his heart condition and that the claimant had been turned down for jobs at a service station and grocery store because of his illness. We found that the claimant had demonstrated his inability to perform either his former job or "any other job" and that the burden therefore shifted to the employer to demonstrate availability of work which the claimant could perform. Prior to the hearing before the ALJ, the employer offered the claimant two positions but the ALJ determined that the claimant was not physically able to perform these two particular jobs. Although we stated that there was ample basis for the ALJ to conclude that there was no evidence of actual job opportunities for the claimant, there is no indication in the opinion of whether the employer made any showing of job availability other than the two specifically offered by the employer itself. We read *Diamond M. Drilling* not as requiring that the employer offer the claimant a job or find a specific job for the employee, but rather as requiring some showing of work available to a claimant which is within that claimant's physical and educational ability, age, experience, etc. to perform and secure.

We made this clear in *Odom Construction Co. v. United States Department of Labor, supra.* In *Odom* we stated that the claimant in *Diamond M.* had shown that he was unable to do *any* work whatsoever after his injury. In *Odom*, we affirmed the BRB's finding of total and permanent disability of a claimant who had injured his left hand. Claimant Maze, who lived in a small town approximately 125 miles from metropolitan New Orleans, was 54 years old at the time of the hearing and had a fourth grade education with no formal technical training. His prior work history had involved jobs requiring heavy use of the arms, wrists, and hands, the area affected by his injury. We upheld the BRB's finding that the employer had made no showing of availability of work of a light nature that Maze could do. "[The employer] has presented no evidence of available work that Maze could still per-

form." 622 F.2d at 116. The opinion reflects that our holding was based on a *complete failure* of the employer to show job availability.

### At Long Last: to the Specific

Finally, we come to the specific facts of this case. From the ALJ's opinion, it is clear that the burden placed on the employer was more than simply showing job availability as we referred to this in *Odom*. The ALJ stated that while the employer had presented evidence of jobs that the claimant might be able to perform, "[t]hey did not show any actual job *offers* to the Claimant." (emphasis added) The ALJ required the employer to prove that the claimant "has actual opportunities to obtain other suitable employment." We hold that the standard of "actual job offers" is not that which we have required in past cases, does not accord either with our prior decisions or the principles we announce. The ALJ erred as did the BRB in the application of the appropriate legal standard required to be met by the employer. It is therefore necessary to remand for the development of all appropriate evidence for consideration under the correct standards.

We emphasize that our reversal of this case is within the scope of our review since we are not overturning the factual conclusions of the ALJ, but rather reversing for an error of law. We recognize that the ALJ may have discounted the reliability and credibility of the employer's rehabilitation expert, Firebaugh. Firebaugh admitted that he had not had a personal meeting with Turner and had no firsthand knowledge of Turner's intelligence or interests. The catalogue of some of the jobs which Firebaugh stated Turner could perform and were available to him might have raised doubts in the mind of the ALJ. For instance, Firebaugh stated that Turner could be a forest tower man, a job which the ALJ could question for one who cannot climb. Weighing of credibility and determination of factual disputes is for the ALJ, provided there is substantial evidence to support his finding. We do not reach the

issue of substantial evidence since we find an error of law was made by the ALJ.

### Taking the Sting out of Bumble Bee

■ We come now to the task of articulating the standard this Circuit adopts as to the burden an employer must meet to show job availability to a claimant and the correlative burden on the employee to demonstrate inability to obtain potentially available employment. The stringent standard enunciated in *Bumble Bee* and also used by the ALJ in this case would make the employer, in effect, an employment agency, required to secure specific positions for a claimant to satisfy the millstone of proof. A finding of permanent and total disability would result by simply proving that one cannot return to his former job, thereby encouraging an injured employee, rather than seeking rehabilitation, to rely on the presumption that operates in his favor and to avoid any active effort to secure alternate employment. This runs counter to the goal behind the Longshoremen's Act, not only of compensating for financial losses, but by unlimited obligations for continuing medical treatment, rehabilitating an injured worker so that he can become, to the extent possible, a productive member of society. This is counter to all of the innumerable projects, governmental (state and federal)

and private, which look toward restoring to the handicapped or injured the opportunity to become useful, meaningful citizens and human beings.

■ We believe some common sense standard must be adopted which allows the burden of establishing job availability to remain on the employer but makes this burden one which the employer can meet by proof short of offering the claimant a specific job or proving that some employer specifically offered claimant a job.[14] Of course the standard should incorporate the specific capabilities of the claimant, that is, his age, background, employment history and experience, and intellectual and physical capacities.

■ Job availability should incorporate the answer to two questions. (1) Considering claimant's age, background, etc., what can the claimant physically and mentally do following his injury, that is, what types of jobs is he capable of performing or capable of being trained to do? (2) Within this category of jobs that the claimant is reasonably capable of performing, are there jobs reasonably available in the community for which the claimant is able to compete and which he could realistically and likely secure?[15] This second question in effect re-

14. In a recent decision, the BRB modified a finding of total permanent disability made by the same ALJ (McElroy) who heard Turner's case. In doing so the Board remarked that "[t]he administrative law judge while finding permanent total disability did not reject or indeed even comment on this vocational testimony." *Pilkington v. Sun Shipbuilding and Dry Dock Co.*, 9 BRBS 473 (1978). This is highlighted by the hearing before the ALJ in which both parties presented testimony by vocational experts. The following exchange took place between the employer's expert and the claimant's counsel:

Counsel for Claimant: Is there a job available [with a particular company named by the expert] for him right now?
Witness: He can apply for one.
Counsel for Claimant: I didn't ask that. I asked you—. . . .
Witness: If there is a job available, whether he gets hired or not, I couldn't answer.
Counsel for Claimant: I am asking you whether or not you made this interview or

inquiry, whether or not there is a job available right now for Mr. Pilkington?
Witness: There is a job available. Whether Mr. Pilkington gets hired or not, I have no idea. That all depends on the impression he [makes] in the interview.
Counsel for Claimant: I see. That is a factor isn't it?
Witness: Sure. It would be a factor if you or I went for the interview.

15. This standard is similar to that applied in Social Security cases by the majority of courts prior to the 1967 amendments to the Social Security Act. Judge Friendly articulated a two-step test for determining whether an applicant for disability insurance benefits is unable "to engage in any substantial gainful activity."

Such a determination requires resolution of two issues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available. . . .

quires a determination of whether there exists a reasonable likelihood, given the claimant's age, education, and vocational background that he would be hired if he diligently sought the job.

This brings into play a complementary burden that the claimant must bear, that of establishing reasonable diligence in attempting to secure some type of alternate employment within the compass of employment opportunities shown by the employer to be reasonably attainable and available. This obligation to seek work does not alter the statutory presumption of coverage, nor the employer's initial burden of proving job availability. It merely makes explicit that which has always been implicit—if alternate jobs exist which the claimant could reasonably *perform* and *secure* had he diligently *tried*, the employer, after demonstrating the existence of such jobs has met his burden. Job availability should depend on whether there is a reasonable opportunity for the claimant to compete in a manner normally pursued by a person *genuinely* seeking work with his determined capabilities.

Whatever the deficiencies in the employer's proof on actual job availability, both the ALJ and BRB proceeded on an erroneous legal course rejecting, in effect, everything short of proof of a specific job offer. In the face of this it is no wonder that Turner sat quietly enshrouded in the helpful legal presumption. He made no rebuttal to the employer's showing, admitting that he had not attempted to secure other employment at any time following his surgery and in fact indicating his reluctance to do so for fear of losing his pension benefits from his union.

We hold that the employer is entitled to attempt to establish that at the critical times there were jobs reasonably available within Turner's capabilities and for which Turner was in a position to compete realistically had he diligently tried. If it is established that there are jobs which the claimant can realistically perform and secure, there may not be a finding of total and permanent disability under LHWCA.

The employer's burden of demonstrating that a claimant is able to *secure* employment simply cannot amount to a requirement that the employer either hire the claimant himself or find him a guaranteed job. The employer does not have to lead the claimant to water, only establish that water is nearby which the claimant may drink if he reaches for it.

REVERSED AND REMANDED.

---

*Kerner v. Flemming,* 283 F.2d 916, 921 (2nd Cir. 1960) (citation omitted). The 1967 amendments partially modified the *Kerner* approach by requiring a national economy test for job availability.

Unlike the Social Security Act, LHWCA includes a statutory presumption of coverage and does not restrict disability to "physical or mental impairment" but encompasses an economic concept as well.