TRANS–STATE DREDGING and Hartford Accident and Indemnity Company, Petitioners,

v.

BENEFITS REVIEW BOARD, U.S. Department of Labor and David E. Tarner, Respondents.

No. 83–1234.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 1, 1983.

Decided April 3, 1984.

Rehearing and Rehearing En Banc Denied July 9, 1984.

H. George Kagan, Miami, Fla. (Miller, Hodges & Kagan, Miami, Fla., on brief), for petitioners.

Janet R. Dunlop, Washington, D.C. (Francis X. Lilly, Deputy Sol. of Labor, Donald S. Shire, Associate Sol., Washington, D.C., on brief), for respondent, Director OWCP.

D. Culver Smith, III, Palm Beach, Fla. (Steel Hector Davis Burns & Middleton, Palm Beach, Fla., on brief), for respondent Tarner.

Before WIDENER, SPROUSE and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

■ Trans-State Dredging and Hartford Accident and Indemnity Company (referred to collectively as employer or Trans-State) appeal a decision of the Department of Labor Benefits Review Board (BRB or Board) which found the claimant to be permanently and totally disabled and awarded benefits under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.* The BRB found that Trans-State did not meet its burden of showing the availability of work that the claimant could perform. The nature of the burden of establishing job availability was a question left open in *Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Compensation Programs,* 592 F.2d 762 (4th Cir.1979). We now seek to clarify the showing required of both the employer and the employee. Because we find that the BRB imposed too stringent a standard on the employer and did not impose on the claimant a complementary burden of demonstrating "reasonable diligence in attempting to secure some type of alternative employment," *New Orleans (Gulfwide) Stevedores v. Turner,* 661 F.2d 1031, 1043 (5th Cir.1981) we reverse and remand the case to allow the parties to introduce evidence on these issues.

I

On June 25, 1971 claimant David E. Tarner, a 33-year-old welder, was injured in a work related accident when a four by eight sheet of plywood fell onto his head.[1] He continued to work for ten days before seeking the aid of a physician. He subsequently received temporary total disability payments for a period of five weeks (July 3, 1971 to August 8, 1971) during which he was unable to work. From August 1971 until May 1976 he worked for different employers as a welder, carpenter or in some other capacity but was either laid off or unable to perform the work. In August 1973 he injured his left arm and shoulder. Trans-State agrees that this 1973 injury does not constitute an intervening cause of Tarner's present disability. Trans-State also accepts the finding that Tarner is unable to perform work requiring heavy labor comparable to his prior employment as a welder. The employer disputes, however, the BRB's finding that claimant is permanently and totally disabled, with such disability dating from May 10, 1976 when Tarner was last gainfully employed.

■ Disability under LHWCA is "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or *any other employment.*" 33 U.S.C. § 902(10) (emphasis added). Once a claimant proves he is disabled from his regular employment, the burden is on the employer to show that alternative employment is available. *Newport News, supra,* 592 F.2d at 765. At the hearing before the Administrative Law Judge (ALJ), Trans-State endeavored to meet this burden through the testimony of a vocational rehabilitation and employment specialist. The specialist testified that he studied all the available medical information and interviewed and tested Tarner. In June and July of 1979, relying on his evaluation of Tarner, the vocational expert checked the records of the local office of

---

1. The accident occurred in Beaufort, South Carolina whereas the administrative proceedings took place in Florida where Tarner was living. After hearing oral argument, the Eleventh Circuit transferred the case to this court because the fact that the injury occurred in South Carolina raised questions about subject matter jurisdiction. *Trans-State Dredging v. Tarner,* 695 F.2d 505 (11th Cir.1982).

the Florida State Employment Service and the local newspaper listings and concluded that there existed jobs involving light and sedentary work that, in his opinion, Tarner could perform.

The hearing before the ALJ was held in December 1979. Originally scheduled for July 1979, it was cancelled at the request of claimant's attorney and rescheduled for September 1979. The second hearing was cancelled by the ALJ and reset for December. The ALJ found Tarner had a ruptured intervertebral disc in his neck, but that he had refused the advice of numerous doctors to have a myelogram in an effort to confirm this diagnosis and he had refused any type of surgery to alleviate his symptoms.

## II

The BRB affirmed the ALJ's finding that Trans-State had failed to meet its burden of "showing available suitable alternate employment." [2] The Board relied on two grounds for this conclusion. First, the BRB noted that the vocational expert had not contacted the businesses that listed jobs. The claimant argues that the employer must prove the availability of a job by at least calling a prospective employer to see if the employer would hire someone with the same background, age and disabilities as the injured employee. No circuit court of appeals has adopted this rule and we conclude that such a standard places too heavy a burden upon the employer. The employer need not rehire a claimant or assist him in finding other employment. Nor is the employer obligated to show that an actual job offer has been made to the claimant. Instead, we approve the standard articulated by the Fifth Circuit in *Turner, supra:*

> We believe some common sense standard must be adopted which allows the burden of establishing job availability to remain on the employer but makes this burden one which the employer can meet by proof short of offering the claimant a specific job or proving that some employer specifically offered claimant a job. Of course the standard should incorporate the specific capabilities of the claimant, that is, his age, background, employment history and experience, and intellectual and physical capacities.
>
> Job availability should incorporate the answer to two questions. (1) Considering claimant's age, background, etc., what can the claimant physically and mentally do following his injury, that is, what types of jobs is he capable of performing or capable of being trained to do? (2) Within this category of jobs that the claimant is reasonably capable of performing, are there jobs reasonably available in the community for which the claimant is able to compete and which he could realistically and likely secure? This second question in effect requires a determination of whether there exists a reasonable likelihood, given the claimant's age, education, and vocational background that he would be hired if he diligently sought the job.

661 F.2d at 1042–1043 (footnotes omitted).

Following the lead of *Turner,* we also hold that the employee bears the burden of demonstrating his willingness to work.[3]

---

**2.** The ALJ also commented that "[b]ased upon the Claimant's testimony which is credible, it is very doubtful that the Claimant could even perform light and sedentary work or jobs on a regular sustained basis in his present condition based upon pain and very limited used [sic] of his neck with problems in his left arm and hand." In a footnote, the BRB indicated that it considered the comment to be a finding of fact and that such finding was supported by substantial evidence. The BRB also noted that the employer did not appeal this "finding." We conclude, however, that the Board misinterpreted the significance of the ALJ's remark. The

statement is a qualified one. Further, it expands considerably on a prior, clear finding of fact that "Claimant is permanently and totally disabled from following his previous type of employment, that is of a welder or a carpenter or even any type of heavy exertional labor." In order to constitute an appealable finding of fact, a statement must be clear and unequivocal.

**3.** Trans-State contends that Tarner made no effort to find work. The employer asserts that claimant did not cooperate with the vocational expert beyond the initial tests and interviews and that Tarner refused the specialist's offer to

This brings into play a complementary burden that the claimant must bear, that of establishing reasonable diligence in attempting to secure some type of alternate employment within the compass of employment opportunities shown by the employer to be reasonably attainable and available. This obligation to seek work does not alter the statutory presumption of coverage, nor the employer's initial burden of proving job availability. It merely makes explicit that which has always been implicit—if alternate jobs exist which the claimant could reasonably *perform* and *secure* had he diligently *tried*, the employer, after demonstrating the existence of such jobs has met his burden. Job availability should depend on whether there is a reasonable opportunity for the claimant to compete in a manner normally pursued by a person *genuinely* seeking work with his determined capabilities. (Emphasis in original.)

661 F.2d at 1043.

■ Second, the BRB rejected the testimony of the vocational expert with respect to the availability of employment on the grounds that the information was untimely.[4] This conclusion was based on the fact that the specialist last checked the listings in July 1979 whereas the hearing was held in December 1979. The Board also found it to be significant that, at the hearing, the vocational expert testified that the dates the jobs had been listed extended from October 1978 through July 1979. The two postponements of the hearing should not have affected the weight of the testimony. In addition, the fact that the jobs were still posted in July 1979 implies that the work was available at that time. If accepted by this court, the timeliness grounds relied on by the BRB could be extended to cover medical testimony and many other areas of inquiry. We decline to adopt such a rule. The holding of *Turner* was that "the em-

ployer is entitled to attempt to establish that at the critical times there were jobs reasonably available within Turner's capabilities and for which Turner was in a position to compete realistically had he diligently tried." 661 F.2d at 1043. We find that it would be unreasonably burdensome and restrictive to define "critical times" as solely the period immediately prior to the administrative hearing.

REVERSED AND REMANDED.

SPROUSE, Circuit Judge, dissenting:

I respectfully dissent.

*Newport News* requires the employer to prove that "there [are] jobs available in the local economy which the claimant, considering his age, past experience and disability, [is] capable of performing." 592 F.2d at 765 (quoting *Hicks v. Gardner*, 393 F.2d 299 (4th Cir.1968)). I agree with the majority that the quantum of proof required to satisfy this standard does not necessarily include telephoning prospective employers or performing any specific mechanical job search on the claimant's behalf. I disagree, however, with the majority's apparent belief that a vocational expert's testimony is in all cases sufficient to meet this standard. The proof of employability must pertain to the availability of jobs for the particular claimant, not for the world at large, nor for some shadow of a person possessing roughly the same demographic profile as the claimant's. *Newport News*, 592 F.2d at 765. *See also American Stevedores, Inc. v. Salzano*, 538 F.2d 933 (2d Cir.1976); *Perini Corp. v. Heyde*, 306 F.Supp. 1321 (D.R.I.1969). A vocational expert may be able to provide such proof in specific cases, but ritualistic reliance on his expertise in all instances runs counter to the broad remedial purposes of the Longshoremen's and Harbor Workers' Act.

I also disagree with the majority's perception that there is a need to define further the *Newport News* rule. *Newport*

---

assist him in finding employment. Trans-State also claims that Tarner had not registered with the Florida State Employment Office or made any other serious attempt to obtain a job. ·

4. This ruling is impossible to justify in this case involving an accident more than ten years old and medical reports used by Tarner to establish his disability that were many years old.

states that the employer has the burden of proof on the claimant's employability, once it has been established that he no longer can perform his regular work. The various methods available to the employer to meet this burden cannot be standardized in a single formula, applicable to every factual circumstance. Ultimately, it is the probativeness of the employer's evidence that determines the outcome, not the format in which it is presented.

In Tarner's case, the vocational expert reached the conclusion that the claimant was employable by searching the local want ads and examining the Employment Security Office's job listings. Many of the jobs he identified as available to Tarner had been posted eighteen months before the disability hearing. His most recent survey had occurred six months before he testified that openings existed for a man of Tarner's obvious disabilities. In my mind, testimony of job availability so remote in time to the claimant's hearing is not even sufficient to show that the jobs exist for an able-bodied individual, much less for a man with Tarner's handicap.

The vocational expert concededly interviewed Tarner twice, although each time the meeting was brief. His testimony concerning Tarner's ability to perform certain categories of sedentary work, therefore, deserved some weight. It is quite a precarious leap, however, to conclude that he or any other expert could know whether jobs are actually available to a person with Tarner's physical limitations merely by examining the stale job listings of a state employment office or a local newspaper.

I believe, moreover, that the majority opinion goes far astray when it questions Tarner's willingness to work. Tarner sustained his injury on June 25, 1971, yet he continued to hold various jobs in the occupation for which he was trained over the next five years. He was forced to leave each of these because the work so exacerbated his physical condition that he was unable to perform his tasks satisfactorily. From May 10, 1976 to the present, Tarner's condition has worsened to the point that he is unable to perform any work. His disability, as presently diagnosed, consists of a ruptured disc in the C–5, 6, and 7 areas of the neck.

In *Newport News* we held that

[a] claimant seeking an award for total disability must prove that he is disabled by reason of his industrial injury from performing his regular employment. Having shown such a disability, the claimant is entitled to an award under the Act unless the employer alleges that he is substantially and gainfully employable. Then the burden shifts to the employer, the proponent of a finding of *less* than total disability, to prove that alternate employment is available.

592 F.2d at 765. The key element of our holding in *Newport News* was that the proponent of a finding of less than total disability shoulders the burden of proving that the injured worker is employable. The majority would impermissibly reverse that burden by using Tarner's commendable but unsuccessful attempts to work in spite of his painful physical condition, as evidence of his employability. Judge Winter exposed the perverseness of such logic in *Haughton Elevator Co. v. Lewis*, 572 F.2d 447, 451 (4th Cir.1978) (concurring):

Both the administrative law judge and the Benefits Review Board were of the opinion that "if [the claimant] were not working at all, he would probably be found to be permanently totally disabled." I agree with the Board that "it would be unfair to penalize [the claimant] by denying him compensation for permanent total disability because he made an extraordinary effort to keep working" and that a man "having a severe physical disability as a result of an employment-related injury should not be required to continue enduring excruciating pain and subjecting himself to the possibility of further injury by performing work which is more strenuous than that type of 'light' work he was advised to do."

Finally, I disagree with the majority's conclusion that the administrative law

judge did not make a factual determination concerning Tarner's inability to perform even light and sedentary work. The ALJ in his finding stated:

> Based upon the Claimant's testimony which is credible, it is very doubtful that the Claimant could even perform light and sedentary work or jobs on a regular sustained basis in his present condition based upon pain and very limited used [*sic*] of his neck with problems in his left arm and hand. Furthermore, Mr. Thompson testified that he did not contact any potential employers and cannot testify that any of the job listing [*sic*] in the employment office are available to this Claimant therefore it is concluded that the Respondents have failed to sustain their burden in establishing that there is work available to this Claimant that he can perform and do on a regular sustained basis within the area of his residence.

I would affirm the decision of the Benefits Review Board.