### SLATTERY ASSOCIATES, INC. and Hartford Accident & Indemnity Co., Petitioners,

v.

### Mark W. LLOYD and Director, Office of Workers' Compensation Programs, Respondents.

### No. 82–2404.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 17, 1983.

Decided Jan. 20, 1984.

**24.** TWU Brief at 10; Pan Am Brief at 37.

William P. Dale, Washington, D.C., for petitioners.

Timothy F.X. Cleary, Washington, D.C., for respondent, Mark W. Lloyd.

Before EDWARDS and SCALIA, Circuit Judges, and LUMBARD,* Senior Circuit Judge, United States Court of Appeals for the Second Circuit.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Separate concurring statement filed by Senior Circuit Judge LUMBARD.

HARRY T. EDWARDS, Circuit Judge:

This case arises out of a petition for review of an order of the Benefits Review Board ("the Board") of the United States Department of Labor. In the proceedings below, the petitioner sought compensation under the Longshoremen's and Harbor Workers' Compensation Act ("the Act")[1]

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (Supp. V 1981).

1. 33 U.S.C. §§ 901–950 (1976 & Supp. V 1981). The Act is applicable to the petitioner's injury by virtue of § 1 of the District of Columbia Workmen's Compensation Act, previously cod-

for medical treatment that he had procured from his physician, Dr. Schuster. The Administrative Law Judge ("ALJ") held that the petitioner is not entitled to such compensation because he and his treating physician unjustifiably failed to comply with certain statutory requirements contained in sections 7(b) and (d) of the Act.[2] On review of the ALJ's decision and order, the Board found—contrary to express findings made by the ALJ—that the employer's physician had refused to provide further treatment to the petitioner, and held that because of this refusal the petitioner is entitled to compensation for all necessary treatment that he subsequently procured on his own initiative.

We conclude that the findings of the ALJ are supported by substantial evidence in the record considered as a whole, and that the Board therefore committed legal error in overturning those findings and substituting contrary findings of its own. Accordingly, we set aside the order of the Board and reinstate the judgment of the ALJ denying compensation for the treatment provided by Dr. Schuster.

## I. BACKGROUND

### A. The Facts

Claimant Mark Lloyd injured his lower back on October 30, 1975, while working as a carpenter for Slattery Associates, Inc., on the 14th Street Bridge in the District of Columbia. The employer referred Mr. Lloyd to the Workmen's Clinic,[3] where he received initial medical treatment from Dr. Hyde. Subsequently Dr. Hyde referred Mr. Lloyd to Dr. Gordon, an orthopedic surgeon. Mr. Lloyd testified that he voluntarily went to see Dr. Gordon after receiving the referral. Mr. Lloyd saw Dr. Gordon or his asso-

ciate for treatment on at least six occasions from November 26, 1975, until January 28, 1976. The treatment prescribed by Dr. Gordon consisted primarily of medication and physical therapy, including exercises, hot packs and massages. On January 28, 1976, Dr. Gordon determined that Mr. Lloyd had made a satisfactory recovery and had no residual complaints or disability, and therefore discharged Mr. Lloyd from care and told him that he was able to return to his regular job. Dr. Gordon testified, however, that he remained available to perform any follow-up treatment that Mr. Lloyd should later request, and that he told Mr. Lloyd that he could call and come back if he had further trouble.

Mr. Lloyd claimed that he did have further trouble with his back, which he testified would be reinjured by simple daily activities such as lifting bags of groceries. Mr. Lloyd did not wish to return to Dr. Gordon, however, because he had not been satisfied with Dr. Gordon's method of treatment. Instead, when his back was later apparently reinjured, Mr. Lloyd obtained from his attorney a referral to another orthopedic surgeon, Dr. Azer. Mr. Lloyd saw Dr. Azer on at least three occasions from June 9, 1976, until May 11, 1977, but did not find Dr. Azer's treatment helpful. Mr. Lloyd therefore had his attorney refer him to yet another orthopedic surgeon, Dr. Schuster, who treated Mr. Lloyd from August 22, 1977, until November 1, 1978. Dr. Schuster prescribed exercises, medication and a lumbosacral support. In addition, Dr. Schuster prescribed transcutaneous electrical nerve stimulation and group therapy in order to treat Mr. Lloyd's chronic pain and depression.

---

ified at D.C. CODE ANN. § 36–501 (1973). Application of the Act to the District of Columbia now has been superseded, however, by the District of Columbia Workers' Compensation Act, D.C. CODE ANN. §§ 36–301 to –345 (1981 & Supp.1983). *See District of Columbia v. Greater Washington Cent. Labor Council,* 442 A.2d 110 (D.C.1982) (District of Columbia Council did not exceed its legislative authority when it enacted the District of Columbia Workers' Compensation Act and repealed the existing

workers' compensation legislation applicable to the private sector in the District of Columbia), *cert. denied,* —— U.S. ——, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983).

**2.** 33 U.S.C. § 907(b), (d) (1976).

**3.** The clinic is variably referred to in the record as the "Workmen's Clinic" and the "Workmen's Compensation Clinic."

Mr. Lloyd never requested the employer to furnish or authorize the treatment provided by Dr. Schuster, and never requested the employer, the insurance carrier, or the appropriate Deputy Commissioner of the Office of Workers' Compensation Programs to consent to a change of physicians. In addition, Dr. Schuster did not submit any reports to the employer, the carrier, or the Deputy Commissioner until December 1, 1977, over three months after he first treated Mr. Lloyd.

## B. *The Administrative Proceedings*

Mr. Lloyd was awarded temporary total disability benefits for his back injury by Administrative Law Judge Briggs on April 1, 1977. Judge Briggs' order stated, in part, that "Respondent shall pay, or reimburse Claimant as appropriate, for the reasonable cost of such necessary diagnostic, medical and surgical care and treatment as the nature of his injury and the process of recovery has or may require [sic] in the future, *pursuant to Section 7 of the Act.*" J.A. 156 (emphasis added). On March 21, 1978, the parties filed an application for approval of an agreed settlement under section 8(i)(A) of the Act, 33 U.S.C. § 908(i)(A) (1976). Section 8(i)(A) authorizes the Deputy Commissioner to approve settlements for *compensation.* The parties indicated that they were not seeking approval of a settlement under section 8(i)(B), 33 U.S.C. § 908(i)(B) (1976), which authorizes the Deputy Commissioner to approve settlements for *medical benefits.* The Deputy Commissioner approved the agreed settlement pursuant to section 8(i)(A) on April 4, 1978. Under the settlement, Mr. Lloyd received $50,000 in compensation for his back injury plus attorney's fees. The employer remained liable for any medical expenses that Mr. Lloyd incurred in accordance with section 7 of the Act.

Dr. Schuster submitted his first bill to the carrier on May 3, 1978. On May 22, 1978, the employer and the carrier gave notice to the Deputy Commissioner that they controverted Mr. Lloyd's right to receive compensation for the treatment provided by Dr. Schuster because Dr. Schuster's treatment allegedly had not been provided in accordance with section 7 and applicable regulations. The matter came to a formal hearing before Administrative Law Judge Brissenden on January 11, 1980. On May 13, 1980, Judge Brissenden issued a decision and order denying Mr. Lloyd's claim for medical expenses for the treatment provided by Dr. Schuster. Judge Brissenden found that the treatment was reasonable and necessary, but agreed with the employer and the carrier that Mr. Lloyd and Dr. Schuster had failed to comply with the requirements of section 7 and the regulations.

Mr. Lloyd appealed Judge Brissenden's decision and order to the Benefits Review Board. On September 30, 1982, the Board reversed Judge Brissenden's order and awarded Mr. Lloyd medical benefits. The Board agreed with Judge Brissenden that the requirements of section 7 and the implementing regulations had not been complied with, but held that compliance was unnecessary, or that noncompliance was excused, because Dr. Gordon's actions were tantamount to a refusal by the employer to provide or authorize further treatment.

## II. ANALYSIS

The sole issue in this case is whether Mr. Lloyd is entitled to compensation for the cost of the medical treatment provided by Dr. Schuster. The Administrative Law Judge determined that Mr. Lloyd is not entitled to such compensation because three statutory requirements set forth in sections 7(b) and (d) of the Act, 33 U.S.C. § 907(b), (d) (1976), were never satisfied. First, the ALJ found that Mr. Lloyd did not request the employer to furnish or authorize the services provided by Dr. Schuster, and that the employer did not refuse to furnish or authorize such services. Second, the ALJ found that Mr. Lloyd did not obtain written consent of the employer, the carrier, or the Deputy Commissioner before he changed physicians. Third, the ALJ found that Dr. Schuster did not furnish to the employer and the Deputy Commissioner a report within ten days of his first treatment of Mr. Lloyd. These findings were cited by the

ALJ to support alternative grounds for holding that Mr. Lloyd is not entitled to compensation. We will consider each of the ALJ's findings in turn.

### A. *The Requirement of an Employee Request for Medical Services*

Section 7(d) of the Act provides in part that:

> An employee shall not be entitled to recover any amount expended by him for medical or other treatment or services unless he shall have requested the employer to furnish such treatment or services, or to authorize provision of medical or surgical services by the physician selected by the employee, and the employer shall have refused or neglected to do so, or unless the nature of the injury required such treatment and services and the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide or authorize the same ....

33 U.S.C. § 907(d) (1976); *see also* 20 C.F.R. § 702.421 (1983).

Both the ALJ and the Benefits Review Board found that Mr. Lloyd never requested the employer to furnish or authorize the services provided by Dr. Schuster. However, "[w]hen an employee is told by the employer's physician that 'he is recovered from his injury and requires no further treatment, he has, in effect, been refused treatment by the employer,' and is therefore entitled to reimbursement for all necessary treatment subsequently procured on his own initiative." *Shahady v. Atlas Tile & Marble Co.,* 682 F.2d 968, 970 (D.C.Cir. 1982) (per curiam) (quoting *Atlantic & Gulf Stevedores, Inc. v. Neuman,* 440 F.2d 908, 911 (5th Cir.1971)), *cert. denied,* —— U.S. ——, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983); *see also George O. Buckhaults,* 2 BEN.REV. BD.SERV. (MB) 277, 279 (Sept. 19, 1975).

In the present case, the Board found that Dr. Gordon did refuse to provide further treatment to Mr. Lloyd and that Dr. Gordon was the employer's physician, so that Dr. Gordon's refusal is attributable to the employer. These Board determinations reversed those of the ALJ, who had found that Dr. Gordon did *not* refuse to provide further treatment and that Dr. Gordon was *not* the employer's physician. Under the Act, the Board is required to treat the findings of the ALJ as conclusive if they are supported by substantial evidence in the record considered as a whole. 33 U.S.C. § 921(b)(3) (1976); *see also* 20 C.F.R. § 802.301 (1983). We conclude that the ALJ's findings are supported by substantial evidence and that the Board therefore committed legal error by substituting its own contrary findings.

### 1. *Dr. Gordon's Alleged Refusal to Provide Treatment*

We consider first the ALJ's finding that Dr. Gordon did not refuse to provide further treatment to Mr. Lloyd. Dr. Gordon testified that when he released Mr. Lloyd from treatment on January 28, 1976, he remained available to perform any follow-up treatment that Mr. Lloyd should request. Dr. Gordon further testified that he told Mr. Lloyd that he could call and come back if he had any further trouble. It was not until over a year and a half later, on August 22, 1977, that Mr. Lloyd first sought treatment from Dr. Schuster. The record supports the conclusion that Dr. Gordon's prior conduct did not indicate that he would have refused treatment had Mr. Lloyd requested it at that time. In *Shahady,* in contrast, the claimant testified that he actually did request further treatment from the employer's physician, and that the physician told him that "[h]e was fine," "there was nothing wrong with [his] leg," and "to come back and see him in a year." 682 F.2d at 969. Within a few months of this discharge the claimant independently procured treatment. *Id.* at 970. In *Shahady,* therefore, the record clearly established that, at the time when the employee independently procured treatment, he had ample reason to believe that the employer's physician would have refused to provide any treatment. In the present case, however, we conclude that the ALJ's finding that Dr. Gordon did not refuse to provide

further treatment to Mr. Lloyd is supported by substantial evidence in the record considered as a whole and is conclusive.

The Board's basis for rejecting the ALJ's finding on this point is meritless. The Board concluded that Dr. Gordon's actions were "tantamount to a mistaken diagnosis."[4] In *James Washington,* 3 BEN.REV.BD. SERV. (MB) 474, 479 (May 10, 1976), the Board held that a mistaken diagnosis can be equivalent to a refusal of treatment by the employer. In *Washington,* the employer's doctors diagnosed the claimant's symptoms as arthritis, while the claimant's own physician correctly diagnosed the condition as two degenerated discs. In the present case, in contrast, the Board admits that "Dr. Gordon and Dr. Schuster did not actually diagnose claimant's ailments differently. Each found back pain complicated by accompanying emotional problems."[5] The Board concluded, however, that Dr. Gordon's *method of treatment* was tantamount to a mistaken diagnosis" because it "differed considerably" from Dr. Schuster's method of treatment, which subsequently was found by an administrative law judge to be reasonable and necessary.[6]

The Board's conclusion follows from its premises only if there is exactly one "right" method of treatment. But that, of course, is not the case. Capable doctors can and frequently do disagree about what course of treatment will most benefit the patient. We do not foreclose the possibility that a demonstrably improper method of treatment might constitute a refusal to provide treatment. In the present case, however, the record is devoid of any evidence that Dr. Gordon's method of treatment was medically unacceptable. Indeed, we find no evidence even to indicate that Mr. Lloyd's recovery would have been less successful had he remained under Dr. Gordon's care.

2. *The Claim That Dr. Gordon Was the "Employer's Physician"*

██ We next consider the ALJ's alternative finding that Dr. Gordon was not the employer's physician, so that even if Dr. Gordon had refused to provide further treatment, his refusal could not be attributed to the employer. The Board disagreed with the ALJ and found that Dr. Gordon was the employer's physician.

We note at the outset that the term "employer's physician" does not appear in the Act and is not defined in the case law. The constructive refusal doctrine seems to require, however, that in order for a doctor to be an "employer's physician," the relationship between the doctor and the employer must be such that it is reasonable to assume that the employer will adopt or has adopted the doctor's medical conclusions. Only in such a case would an employee be justified in concluding from the fact that the *doctor* tells him that he is recovered and requires no further treatment that the *employer* will refuse to provide or authorize further treatment if requested.

For example, in *Atlantic & Gulf Stevedores, Inc. v. Neuman,* 440 F.2d 908 (5th Cir.1971), the employer's counsel stated at a hearing before the Deputy Commissioner that the employee was fully recovered and that the employer would contest the need for surgery should it become an issue. When the employee's doctor testified that the employee needed surgery, the employer offered the testimony of two doctors who previously had examined the employee and had reported that he was fit to return to work. Both doctors were of the opinion that surgery was unnecessary. In such circumstances, it was clearly reasonable for the employee to attribute the employer's physicians' conclusions to the employer, and subsequently to obtain further treatment on his own without first requesting the employer's authorization.

In the present case, then, we must examine the relationship between Dr. Gordon and the employer to determine whether there was substantial evidence to support the ALJ's determination that Dr. Gordon

**4.** *Mark W. Lloyd,* 15 BEN.REV.BD.SERV. (MB) 100, 103 (Sept. 30, 1982).

**5.** *Id.*

**6.** *Id.*

was not the employer's physician. The Board had two grounds for concluding, contrary to the ALJ, that Dr. Gordon was the employer's physician. The first ground is that Dr. Hyde, a physician at the alleged "employer's clinic," referred Mr. Lloyd to Dr. Gordon. There is no indication in the record, however, that the Workmen's Clinic, where Mr. Lloyd initially was taken, actually is the "employer's clinic" or has any connection with the employer. While it is true that the employer directly referred Mr. Lloyd to Dr. Hyde, who in turn referred him to Dr. Gordon, given that both Dr. Hyde and Dr. Gordon were apparently independent physicians, this chain of events establishes too attenuated a relationship between Dr. Gordon and the employer to make him the employer's physician.

The second ground for the Board's conclusion is that the employer called Dr. Gordon as its witness. The mere fact that an employer calls as a witness a doctor who previously treated the employee does not retroactively make the doctor the employer's physician. The record in this case does not disclose any significant ongoing relationship between Dr. Gordon and the employer prior to Mr. Lloyd's decision to obtain treatment from Dr. Schuster. Accordingly, we conclude that the ALJ's finding that Dr. Gordon was not the employer's physician is supported by substantial evidence in the record considered as a whole and is conclusive.

### 3. Summary

We conclude that the ALJ's finding that Dr. Gordon did not refuse to provide further treatment to Mr. Lloyd is supported by substantial evidence. We also agree that, even if Dr. Gordon *had* refused, he was not the employer's physician and, therefore, his refusal could not be attributed to the employer. Accordingly, we uphold the ALJ's judgment that Mr. Lloyd unjustifiably failed to comply with the requirements of section 7(d) of the Act and section 702.421 of the regulations.

### B. *Authorization for Change of Physicians*

■ Section 7(b) of the Act provides in part that "[c]hange of physicians at the request of employees shall be permitted in accordance with regulations of the Secretary." 33 U.S.C. § 907(b) (1976). Under the regulations, if the employer has made the initial selection of a physician, the employee subsequently may change physicians upon obtaining written authorization from the employer or, if consent is withheld, from the Deputy Commissioner. 20 C.F.R. § 702.405 (1983). Once the employee has made his initial, free choice of an attending physician, he may change physicians only upon obtaining prior written consent of the employer, the carrier, or the Deputy Commissioner. *Id.* § 702.406. Such consent shall be given when the employee's initial choice was not of a specialist whose services are necessary for, and appropriate to, the proper care and treatment of the compensable injury or disease; consent may be given in other cases upon a showing of good cause for change. *Id.* In the present case, the ALJ found that Mr. Lloyd changed physicians from Dr. Gordon to Dr. Azer and then to Dr. Schuster without ever requesting or obtaining authorization from the employer, the carrier, or the Deputy Commissioner.

In reversing the ALJ's decision and order, the Board did not expressly address the issue of Mr. Lloyd's failure to comply with the change-of-physicians provisions of section 7(b) and the regulations. The Board did find, however, that the employer's physician refused to provide further treatment to Mr. Lloyd. If this finding were proper, Mr. Lloyd's failure to obtain authorization to see Dr. Azer, and possibly his failure to obtain authorization to see Dr. Schuster, might be excused under the Board's holding in *George O. Buckhaults,* 2 Ben.Rev.Bd. Serv. (MB) 277, 280 (Sept. 19, 1975), that "[t]o relieve the employer of the liability for necessary employment related medical expenses merely because a claimant has failed to request permission to change physicians after effectively being refused any further medical treatment is not within the spirit of the Act." In the present case, however, the ALJ's findings that Dr. Gordon did not refuse to provide further treatment and, in any case, was not the employer's physician,

are conclusive. We therefore affirm the ALJ's findings and conclusion that Mr. Lloyd unjustifiably failed to comply with the requirements of section 7(b) of the Act and sections 702.405 and 702.406 of the regulations when changing physicians.

C. *The Requirement of a Physician's Report*

■ Section 7(d) of the Act provides in part:

> [N]or shall any claim for medical or surgical treatment be valid and enforceable, as against such employer, unless within ten days following the first treatment the physician giving such treatment furnish to the employer and the Secretary a report of such injury and treatment, on a form prescribed by the Secretary. The Secretary may, however, excuse the failure to furnish such report within ten days when he finds it to be in the interest of justice to do so, and he may, upon application by a party in interest, make an award for the reasonable value of such medical or surgical treatment so obtained by the employee.

33 U.S.C. § 907(d) (1976); *see also* 20 C.F.R. § 702.422 (1983) (delegating to the Deputy Commissioner and administrative law judge).

In the present case, the ALJ found that although Dr. Schuster began treatment of Mr. Lloyd in August 1977, he did not submit any report to the employer, the carrier, or the Deputy Commissioner until December 1, 1977. The ALJ further found no adequate reason or good cause for Dr. Schuster's failure to file a timely report,[7] and therefore the ALJ declined to excuse the noncompliance.

The Board, however, relied on *Shahady v. Atlas Tile & Marble Co.,* 682 F.2d 968 (D.C. Cir.1982) (per curiam), *cert. denied,* ── U.S. ──, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983), to hold that the ALJ abused his discretion by not excusing Dr. Schuster's failure to file a timely report. In *Shahady,* this court, relying solely on its reading of *George O. Buckhaults,* 2 Ben.Rev.Bd.Serv.

(MB) 277 (Sept. 19, 1975), held that "failure to file a timely report should be excused where medical services are otherwise reimbursable due to the employer's refusal to provide necessary further treatment." 682 F.2d at 970. In the present case, however, the ALJ's finding that the employer did not refuse to provide necessary further treatment is conclusive; therefore, the doctrine announced in *Shahady* is inapplicable.

We note, however, that the *Shahady* doctrine is based on an apparent misreading of *Buckhaults.* In *Buckhaults,* the Board concluded only that "the administrative law judge's failure to recognize that the claimant was 'refused' further medical treatment negates the finding that there was no justification for the failure to report." 2 Ben. Rev.Bd.Serv. at 280. Accordingly, the Board *remanded* to the ALJ to determine whether the failure to report was "excusable in light of the employer's refusal of further medical care." *Id.* The Board in *Buckhaults* did not hold that the ALJ must as a matter of law excuse the failure to file the section 7(d) report when the employer has refused to provide treatment. This is consistent with the statute and the regulations, which give the ALJ *discretion* to excuse noncompliance with the reporting requirement. Accordingly, if in the present case the employer *had* refused to provide further medical treatment, the appropriate disposition would not be to reverse but rather to remand to the ALJ for further consideration. But because the employer did *not* refuse to provide further treatment, and because there was no adequate reason or good cause for Dr. Schuster's failure to file a timely report, we affirm the decision of the ALJ on this last alternative ground of judgment.

### III. Conclusion

For the reasons enumerated above, we reverse the decision and order of the Board and reinstate the judgment of the Administrative Law Judge denying compensation for the treatment provided by Dr. Schuster.

*So ordered.*

---

7. The Act permits the Secretary to excuse late filing "when he finds it to be in the interest of justice to do so," 33 U.S.C. § 907(d) (1976), and the regulations permit the Deputy Commissioner or ALJ to excuse late filing "[f]or good cause shown," 20 C.F.R. § 702.422(b) (1983).

LUMBARD,* Senior Circuit Judge, concurring:

I concur in the decision reinstating the judgment of the ALJ, for the reasons stated in II A 2 and II C of Judge Edwards' opinion: that the ALJ's finding that Dr. Gordon was not the "employer's physician," which is supported by substantial evidence, precludes Lloyd from excusing his own failure to comply with the notice and consent requirements of §§ 7(b) and (d) by reference to Dr. Gordon's conduct; and that the ALJ did not abuse his discretion in declining to excuse Dr. Schuster's failure to file a timely report.

However, as either of the above grounds is sufficient to uphold the ALJ's decision denying compensation for treatment provided by Dr. Schuster, I see no reason to reach the question whether Dr. Gordon's conclusion that Lloyd needed no further treatment was in fact tantamount to a refusal to treat Lloyd. As I have some doubt that there is substantial evidence to support the ALJ's finding that it was not, I would rest the decision solely on the grounds discussed in II A 2 and II C of the court's opinion.

* Sitting by designation.