**ROGER'S TERMINAL AND SHIPPING CORPORATION, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, DEPARTMENT OF LABOR and Emile Smith, Respondents.**

No. 85–4502

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

March 12, 1986.

---

John K. Hill, Jr., Lafayette, La., for Roger's Terminal.

Lloyd N. Frischhertz, New Orleans, La., T. Timothy Ryan, Jr., Sol. of Labor, U.S. Dept. of Labor, Washington, D.C., Karen Kimball, Glenn H. Woodley, Asst. Deputy Comm., New Orleans, La., for Emile Smith.

Benefits Review Bd., U.S. Dept. of Labor, Washington, D.C., for other interested parties.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

Pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (LHWCA), an administrative law judge (ALJ) found that Emile Smith became permanently and totally disabled because of a back injury he sustained while in the course and scope of his employment

with Roger's Terminal and Shipping Corporation. The Benefits Review Board affirmed the award, and Roger's Terminal petitions this Court for review asserting that the administrative law judge failed to properly apply the burden proof in this case. In addition, Roger's Terminal argues that it is not responsible for certain medical expenses incurred by Smith for treatment of his injury. The decision of the Board is affirmed.[1]

## I. FACTS

On May 21, 1978, Emile Smith slipped and fell while loading grain into the hold of a ship during the course and scope of his employment with Roger's Terminal and Shipping Corporation ("Roger's Terminal"), injuring his back. Smith received emergency care, pursuant to Roger's Terminal's authorization, at St. Charles General Hospital in New Orleans where he was treated and released to return to work.

Smith, who testified that he still was experiencing pain, consulted his attorney and was referred to Dr. Kroll. Dr. Kroll diagnosed Smith's condition as a lumbosacral strain. After three more visits, Dr. Kroll referred Smith to a neurosurgeon, Dr. Richardson. During Dr. Kroll's initial treatment of Smith, the claims adjuster for Roger's Terminal made an appointment for Smith with Dr. Garoutte. Smith missed the first appointment, but it was rescheduled and he attended the rescheduled appointment. Dr. Garoutte determined that Smith was suffering from chronic lumbar strain, and noted his agreement with Dr. Kroll that conservative treatment was warranted at that time.

On July 21, 1978, Smith was examined by Dr. Richardson. Dr. Richardson concluded that Smith had a left L–5 nerve root sciatica, and he recommended that Smith undergo a lumbar myelogram. Smith was admitted to Southern Baptist Hospital on July 30, 1978, and a lumbar myelogram was performed the following day. The myelogram revealed "a blunting of the nerve root at L–5 level on the left with a suggestion of a small extradural defect comparable with a small ruptured disc." Record Vol. 1 at 51; Exhibit S–7. Dr. Richardson scheduled a lumbar laminectomy which was performed on August 3, 1978. Smith was discharged on August 10, 1978.

Dr. Richardson determined that Smith reached maximum medical improvement and discharged him on November 24, 1978. Dr. Richardson's final conclusion was that Smith had an estimated disability of fifteen to twenty percent of the body as a whole and that Smith should not do work requiring heavy lifting of more than seventy-five to one hundred pounds or repeated bending. Dr. Garoutte reevaluated Smith on February 12, 1979, at the request of Roger's Terminal. Dr. Garoutte determined that Smith had reached maximum medical improvement and that Smith had a twenty percent permanent partial disability of the lumbar spine. Dr. Garoutte expressed the opinion that Smith was not capable of returning to his prior employment, but that Smith could do other types of work.

During the hearing before the administrative law judge, the parties agreed that Smith would be evaluated by another neurologist, Dr. Schumacher. Dr. Schumacher concluded that Smith had a five to ten percent permanent whole man physical impairment. Dr. Schumacher also concluded that Smith should avoid repetitive lifting, bending, pulling, or pushing of more than seventy-five pounds.

After his injury, Smith moved from New Orleans to Natchez, Mississippi, where he lives with his grandmother. Smith was raised in Natchez. He has a seventh grade education and cannot read or write. Smith's employment history includes work as a laborer and a longshoreman. He has not worked since his accident.

The administrative law judge determined that Smith was unable to return to his

1. Smith moved to dismiss this appeal on the ground that Roger's Terminal failed to name Smith as respondent and Smith was an indispensable party to the appeal. Smith's motion is without merit and is denied.

occupation as a longshoreman as a result of his injury. The administrative law judge then shifted the burden to Roger's Terminal to demonstrate the "realistic job opportunities which the Claimant can perform...." Record Vol. 1 at 52. The ALJ further concluded that because Roger's Terminal "introduced no evidence to show the general availability of suitable employment," Record Vol. 1 at 53, Smith was temporarily and totally disabled from May 21, 1978, until November 24, 1978, and thereafter that Smith was permanently and totally disabled "until such time as the Claimant is able to find alternative employment or the Employer comes forward with evidence establishing that there are suitable, realistic jobs available to the Claimant." Record Vol. 1 at 53. Finally, the ALJ determined that Roger's Terminal was liable for all medical expenses that were incurred as a result of Smith's injury. The Benefits Review Board affirmed the decision of the ALJ. Roger's Terminal now petitions this Court for review. We affirm.

## II. DISCUSSION

### A. *The Finding of Permanent Total Disability*

The LHWCA defines disability as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment, ..." 33 U.S.C. § 902(10). The act itself fails to provide a standard to determine the extent of a disability and to distinguish between those injuries resulting in total permanent, permanent partial, temporary total, and temporary partial disabilities. *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1037 (5th Cir. 1981). It is settled law that "[t]he degree of disability is determined not only on the basis of physical condition but also on factors such as age, education, employment history, rehabilitative potential, and the availability of work that the claimant can do." *Id.* at 1037–38. *Odom Construction Co. v. United States Department of Labor*, 622 F.2d 110, 115 (5th Cir.1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1482, 67

L.Ed.2d 614 (1981); *Diamond M. Drilling Co. v. Marshall*, 577 F.2d 1003, 1005–06 (5th Cir.1978).

In *New Orleans (Gulfwide)*, this Court stated the burdens that obtain in a compensation case:

> By combining the concept of disability as not merely physical with the statutory and case law presumption of coverage, the rule generally stated is that a claimant establishes a prima facie case of disability by showing he cannot perform his former job because of job-related injury. At that point, the burden then shifts to the employer to establish the availability of other jobs that the claimant could perform.

661 F.2d at 1038; *Odom*, 622 F.2d at 115.

The ALJ determined that Smith was unable to return to his former job because of his job-related injury. The Benefits Review Board specifically affirmed that finding. On review, this Court is limited to considering errors of law as well as to making certain that the Board adhered to its statutory standard of review of factual determinations, which is whether the findings of fact are supported by substantial evidence and consistent with the law. *Marathon Oil Co. v. Lunsford*, 733 F.2d 1139, 1141 (5th Cir.1984); *New Orleans (Gulfwide)*, 661 F.2d at 1037. There is more than substantial evidence supporting this factual determination, and Roger's Terminal does not specifically challenge this finding.

The ALJ then shifted the burden to Roger's Terminal to establish the availability of other jobs that Smith could perform. The ALJ determined that Roger's Terminal failed to meet its burden. Roger's Terminal now asserts that the ALJ erroneously misapplied the relevant burdens involved in a showing of job availability.

In *New Orleans (Gulfwide)*, this Court elaborated on the employer's burden to demonstrate job availability:

> Job availability should incorporate the answer to two questions. (1) Considering claimant's age, background, etc.,

what can the claimant physically and mentally do following his injury, that is, what types of jobs is he capable of performing or capable of being trained to do? (2) Within this category of jobs that the claimant is reasonably capable of performing, are there jobs reasonably available in the community for which the claimant is able to complete and which he could realistically and likely secure? The second question in effect requires a determination of whether there exists a reasonable likelihood, given the claimant's age, education, and vocational background that he would be hired if he diligently sought the job.

661 F.2d at 1042–43 (footnote omitted).

Roger's Terminal correctly notes, however, that this Court assigned a correlative burden on the employee to demonstrate inability to obtain potentially available employment. 661 F.2d at 1042.

This brings into play a complementary burden that the claimant must bear, that of establishing reasonable diligence in attempting to secure some type of alternate employment within the compass of employment opportunities shown by the employer to be reasonably attainable and available. *This obligation to seek work does not alter the statutory presumption of coverage, nor the employer's initial burden of proving job availability.* It merely makes explicit that which has always been implicit—*if alternate jobs exist* which the claimant could reasonably perform and secure had he diligently tried, the employer, *after demonstrating the existence of such jobs* has met his burden.

661 F.2d at 1043 (emphasis added; emphasis in original deleted).

Roger's Terminal asserts, relying on this language in *New Orleans (Gulfwide)*, that a claimant has not presented a prima facie

case until the claimant has (1) demonstrated his inability to perform his past job, and (2) also demonstrated that he cannot perform any work or that he has engaged in a diligent search and failed to obtain any employment.

■ This Court does not fully agree with this interpretation of the *New Orleans (Gulfwide)* opinion. That opinion makes clear that the burden placed on the employee does not displace the employer's *initial* burden of demonstrating job availability. This initial burden requires the employer to demonstrate the types of jobs that the claimant can perform, that those types of jobs are available in the relevant community, and that there is a reasonable likelihood that the claimant would be hired if he diligently sought the job. If the employer makes such a showing, the employer's burden has been met, and the claimant can then prevail if he demonstrates that he diligently tried and was unable to secure such employment.

■ In the instant case, the ALJ found the record completely devoid of *any* evidence supporting the existence of the type of work the claimant could perform in the relevant community. The Benefits Review Board affirmed that factual determination, and this Court's own review of the record confirms that the only relevant allegation in the record consists of a completely unsupported statement by Roger's Terminal's attorney that such jobs existed in the community. The ALJ correctly determined that such an unsubstantiated allegation was insufficient to carry the employer's burden.[2] This Court has previously held that failure to present any evidence of job availability can support a determination of permanent total disability if the claimant is incapable of returning to his former job. *Odom*, 622 F.2d at 116.

---

**2.** Roger's Terminal asserts that this Court should place an extremely light burden on the employer in a situation where the claimant's disability is slight and a correspondingly heavier burden in those situations where the claimant's disability is severe, citing *Air America, Inc. v. Director, Office of Workers' Compensation*

*Programs*, 597 F.2d 773 (1st Cir.1979). This Court need not address whether such a "sliding scale" approach to the employer's burden is appropriate in this case because Roger's Terminal wholly failed to introduce any evidence on job availability.

## B. *Liability for Medical Expenses*

Roger's Terminal asserts that it is not liable for Smith's medical expenses because Smith did not comply with the procedures for recovery of medical expenses set forth in 33 U.S.C. § 907.[3] Roger's Terminal asserts that Smith is not entitled to recover his medical expenses because (1) Smith failed to request Roger's Terminal to furnish the treatment or services provided to him and Roger's Terminal at no time refused or neglected to provide or authorize necessary medical care; (2) pursuant to section 907, Smith could not change from Dr. Kroll to Dr. Richardson without the prior written consent of the employer or the Deputy Commissioner, and no such consent was given in this case; (3) nothing in the record demonstrates that Dr. Kroll and Dr. Richardson were on the list of physicians authorized by the secretary pursuant to section 907(b) and (c);[4] and (4) although Smith had a right to choose his own physician pursuant to section 907(b), Smith is not entitled to recover for the services of Dr. Kroll because Dr. Kroll did not provide Roger's Terminal with a report of the injury and treatment within ten days of the first treatment as required by section 907(d). This Court rejects each of these arguments.

The ALJ determined that Smith's medical expenses were recoverable. Several of the ALJ's findings are important to a resolution of these issues. The ALJ found that Smith had been released from St. Charles General Hospital as "fit for duty." Record Vol. 1 at 53. The ALJ found that Smith chose Dr. Kroll and Dr. Richardson as the physicians of his choice pursuant to section 907(b) and 22 C.F.R. § 702.403. The ALJ specifically found that "demand was made upon the Employer for authorization for payment of medical services rendered to Mr. Smith which the Employer refused to do." *Id.* The ALJ also refused to credit the assertion by Roger's Terminal that at all times it was willing to furnish medical care to Smith through Dr. Garoutte. The ALJ concluded that Dr. Garoutte's examinations of Smith were for evaluation purposes only. The ALJ determined that Roger's Terminal was fully aware of Smith's initial treatment and hospitalization, even though the employer was not aware of the actual surgery until after the fact. The ALJ concluded, however, that Roger's Terminal should have been aware that Smith's treatment might include surgery. Finally, the ALJ found that all medical treatment sought by Smith and the corresponding expenses were necessitated by Smith's injury.

In *Atlantic & Gulf Stevedores, Inc. v. Neuman*, 440 F.2d 908 (5th Cir.1971), this Court affirmed the holding of an ALJ that a claimant's failure to abide by the stric-

---

**3.** Prior to the 1984 amendments, which are inapplicable here, 33 U.S.C. § 907(d) provided in pertinent part:

An employee shall not be entitled to recover any amount expended by him for medical or other treatment or services unless he shall have requested the employer to furnish such treatment or services, or to authorize provision of medical or surgical services by the physician selected by the employee, and the employer shall have refused or neglected to do so, or unless the natur' of the injury required such treatment and services and the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide or authorize the same; nor shall any claim for medical or surgical treatment be valid and enforceable, as against such employer, unless within ten days following the first treatment the physician giving such treatment furnish to the employer and the Secretary a report of such injury and treatment, on a form prescribed by the Secretary. The Secretary may, however, excuse the failure to furnish such report within ten days when he finds it to be in the interest of justice to do so, and he may, upon application by a party in interest, make an award for the reasonable value of such medical or surgical treatment so obtained by the employee....

**4.** 33 U.S.C. § 907(b) provided in pertinent part:

The employee shall have the right to choose an attending physician authorized by the Secretary to provide medical care under this Act as hereinafter provided....

33 U.S.C. § 907(c) stated:

The Secretary may designate the physicians who are authorized to render medical care under the Act. The names of physicians so designated in the community shall be made available to employees through posting or in such other form as the Secretary may prescribe.

tures of section 907 did not necessarily bar recovery of medical expenses. In that case, the employer contended that the claimant failed to obtain prior approval for treatment and that the employer at no time refused medical treatment. This Court approved the reasoning of the ALJ, who held that once an employee has been refused treatment by the employer, through a refusal by the employer's doctor to provide further treatment, the claimant needs only to establish that treatment he subsequently procured on his own initiative was necessary treatment for the injury in order to be entitled to recover the expense from the employer. 440 F.2d at 911.[5]

■ The ALJ found that Roger's Terminal refused to authorize treatment, and Roger's Terminal challenges that finding. Though Roger's Terminal takes the position that it was willing to provide care through Dr. Garoutte, it does not specifically challenge the ALJ's finding that Dr. Garoutte's examinations were for evaluation purposes only. The record supports that conclusion of the ALJ. Moreover, the record clearly supports the conclusion that Roger's Terminal was asked to authorize treatment by Dr. Richardson and Roger's Terminal refused. Consequently, the ALJ did not err in determining, in accordance with this Court's decision in *Neuman*, that

all medical expenses subsequent to Roger's Terminal's refusal to authorize or provide needed care, including the surgical costs and Dr. Richardson's fees, were recoverable.[6]

■ Roger's Terminal asserts that Dr. Kroll and Dr. Richardson were not authorized to provide treatment by the Secretary, as required by section 907(b) and (c). Both the ALJ and the Benefits Review Board determined that the employer bore the burden of producing evidence to that effect. No such evidence was in fact presented. This Court finds no error in that assignment of the burden. Such an interpretation is consistent with the general rule that the LHWCA is to be construed liberally in favor of the injured employee. *New Orleans (Gulfwide)*, 661 F.2d at 1038.[7]

■ Finally, this Court notes that section 907(d) provides that if the claimant chooses his own physician, the physician must provide the employer and the Secretary with a report of the injury and treatment within ten days following the first treatment. Dr. Kroll first treated Smith on May 25, 1978. He prepared a report on May 31, 1978, and Smith hand delivered that report to the employer on June 9,

---

5. *Slattery Associates, Inc. v. Lloyd*, 725 F.2d 780 (D.C.Cir.1984) (when an employee is told by the employer's physician that he is recovered and his injury requires no further treatment, he has been refused treatment by the employer and is entitled to reimbursement for all necessary treatment subsequently procured on his own initiative). *See also Shahady v. Atlas Tile & Marble Co.*, 682 F.2d 968 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1146, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983).

This case, unlike *Neuman, Shahady,* and *Lloyd,* does not involve construing a refusal by the employer's doctor to continue treatment as a refusal by the employer of further treatment. Rather, the instant case involves a finding that the *employer* itself refused to provide or authorize medical treatment for the claimant. Nevertheless, we note that St. Charles General Hospital, where Smith was first sent by the employer, released Smith as fit to return to work. The ALJ did not rely on that fact, however, to support the conclusion that Roger's Terminal refused to provide or authorize treatment.

6. Consequently, the argument that Roger's Terminal is not liable for Dr. Richardson's expenses because no prior written authorization was obtained for a change of physicians is meritless. Roger's Terminal had refused specialized care prior to Smith's first visit to Dr. Richardson. Moreover, 33 U.S.C. § 907(b) allows an employee to change physicians in accordance with the regulations, and 20 C.F.R. § 702.406 sets forth the procedure. That regulation provides that an employee who chooses his own physician may not thereafter change without the prior written consent of the employer. The regulation further provides, however, that "[s]uch consent *shall* be given in cases where an employee's initial choice was not of a specialist" whose services are necessary for proper treatment. That provision is directly applicable in this case.

7. It is noted that § 907(c) was amended in 1984 to provide posting of only those physicians and health care providers *not* authorized to provide medical care.

1978. Thus the report was not delivered until fifteen days after the first treatment.

We note, however, that Roger's Terminal had actual notice of the injury on the day of its occurrence, May 21, 1978. Moreover, the employer's representative indicated that he first learned of Smith's treatment by Dr. Kroll over the telephone prior to Smith's visit to the representative on June 9, 1978. Consequently, the employer suffered no actual prejudice from the report being delivered five days later than the statute requires.

The LHWCA provides that the Secretary may excuse late reporting "when he finds it in the interest of justice to do so." 33 U.S.C. § 907(d). The ALJ likewise may excuse late reporting for good cause shown. The better procedure, in a case where the ALJ has not made a specific finding that late reporting is excused, would be to remand the case for such a determination. *See Slattery Associates, Inc. v. Lloyd,* 725 F.2d at 787. Nevertheless, this Court concludes that such a remand would be a mere formality in this case. The ALJ and the Benefits Review Board both have determined that Smith substantially complied with the regulations. We have concluded that the employer suffered no prejudice from the minimal delay involved in this case because the employer was aware of the injury at the outset and received actual knowledge of the treatment before the report was received. This Court is confident that the tardy filing of the report in this case would be excused, and we would be inclined to view a refusal to do so as an abuse of discretion under these facts. *See Shahady,* 682 F.2d at 970.[8]

### III. CONCLUSION

For the reasons stated, the decision of the Benefits Review Board is

AFFIRMED.

---

**8.** *Cf. Nardella v. Campbell Machine Inc.,* 525 F.2d 46, 50 (9th Cir.1975) (a note from doctor, "shortly" after treating claimant, to employer's personnel office informing employer that claimant would be disabled for a month constituted "substantial compliance" with section 907(d), although failure of other doctors to comply not excused by ALJ or court). *But see Maryland Shipbuilding and Drydock Co. v. Jenkins,* 594 F.2d 404 (4th Cir.1979) (noncompliance with section 907(d) barred recovery of medical expenses in situation where claimant never requested treatment or authorization from employer, claimant refused to be examined by employer's physician, and claimant's physician never sent 907(d) report to employer).