# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60835

PORTS AMERICA LOUISIANA, INCORPORATED,

United States Court of Appeals
Fifth Circuit

**FILED**

January 23, 2018

Lyle W. Cayce
Clerk

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; ALEXANDER SCOTT,

Respondents.

Petition for Review of an Order
of the Benefits Review Board
BRB No. 16-0073

Before STEWART, Chief Judge, and JOLLY and OWEN, Circuit Judges.

PER CURIAM:*

This dispute arises under the Longshore and Harbor Workers' Compensation Act (LHWCA).[1] Ports America Louisiana, Inc. (Ports America) appeals a Benefits Review Board (Board) decision affirming an order by the Department of Labor district director that required Ports America to pay for

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 33 U.S.C. §§ 901–950.

No. 16-60835

certain medical treatments for its injured employee, Alexander Scott. We affirm.

## I

Longshore foreman Alexander Scott, age 57, injured his hip and lower back when he was struck from behind by a forklift at work. Scott consented to treatment from Ports America's physician, Dr. Steiner, and had been under his care for approximately five months, when Dr. Steiner told Scott he had reached "maximum medical improvement," did not need additional treatment, and was capable of "returning to his full duty activity without restriction." Scott insisted that he was still in pain and did not feel comfortable returning to work, but Dr. Steiner told him to try to work and to return the next month for a check-up.

Scott did not go back to work. Instead, he sought the opinions of other physicians, who advised him not to recommence his employment duties. When Scott returned to Dr. Steiner in August for the follow-up visit, Dr. Steiner again told Scott that he should return to work and offered no additional treatment. Dr. Steiner recommended an MRI, but told Ports America that Scott's reports of continued back pain were "subjective complaints." Five days later, Scott met with Dr. Bostick, who concluded that Scott had an altered gait and that he should undergo additional physical therapy, take medication for his pain, start using a crutch, and refrain from work.

When Ports America refused to pay for the treatment by Dr. Bostick and ceased compensation payments, Scott requested an informal conference with the district director. The district director found that Scott was entitled to choose another physician because Dr. Steiner had "effectively discharged" him by "refus[ing] further medical treatment." The district director also ordered that Scott undergo an independent medical examination (IME) in light of the "clear disagreement" between Dr. Bostick and Dr. Steiner about whether Scott

No. 16-60835

needed additional treatment. The district director's order required Ports America to pay for the treatment by Dr. Bostick and for the IME. Ports America appealed to the Board, which held that Ports America was only obligated to pay for the services Dr. Bostick provided Scott after the date of the district director's order, but otherwise affirmed the district director's decision.[2]

The LHWCA permits parties adversely affected by a final order of the Board to seek review by the federal court of appeals pursuant to 33 U.S.C. § 921(c).[3] On appeal, Ports America asserts that that the district director failed to apply the correct standard in determining whether Scott's change-of-physician request was permissible. It also argues that the IME was not justified by a medical question as required by statute. We review the decision of the Board to ensure that it correctly reviewed the decision of the district director.[4] In doing so, we independently review the record, applying the same standards the Board used to review the decision of the district director.[5]

## II

The only issues before us are whether the Board erred by affirming the district director's order requiring Ports America to pay for Scott's treatment with Dr. Bostick and for the IME. Compensation payments are not at issue.

## A

The LHWCA requires employers to provide medical treatment until the injured employee recovers.[6] Employees are entitled to choose a physician from

---

[2] While evidentiary issues must be heard by an ALJ before they are reviewed by the Board, *Craven v. Dir., Office of Workers Comp. Programs*, 604 F.3d 902, 906 (5th Cir. 2010), discretionary decisions by the district director may be appealed directly to the Board, *see Jackson v. Universal Mar. Serv. Corp.*, 31 BRBS 103 at *3 (Ben. Rev. Bd. 1997).

[3] 33 U.S.C. § 921(c).

[4] *See Avondale Shipyards, Inc. v. Vinson*, 623 F.2d 1117, 1119 n.1 (5th Cir. 1980); *see also Island Operating Co., Inc. v. Dir., Office of Worker's Comp. Programs*, 738 F.3d 663, 666 (5th Cir. 2013) (citing *Ceres Marine Terminal v. Hinton*, 243 F.3d 222, 224 (5th Cir.2001)).

[5] *See Avondale*, 623 F.2d at 1119 n.1.

[6] 33 U.S.C. § 907(a).

a list of authorized individuals[7] but may not obtain a new physician without the consent of the employer or the district director.[8]

The LHWCA and its implementing regulations outline several avenues for permitting an employee to receive treatment from a different physician. Under 33 U.S.C. § 907(b), the district director may allow an injured employee to change physicians "on his own initiative or at the request of the employer . . . when in his judgment such change is desirable or necessary in the interest of the employee."[9]  It also states that changes of physicians initiated by employees "shall be permitted in accordance with regulations of the Secretary."[10]  Section § 907(c)(2) establishes:

> An employee may not change physicians after his initial choice unless the employer . . . or [district director] has given prior consent for such change.  Such consent shall be given in cases where an employee's initial choice was not of a specialist whose services are necessary for and appropriate to the proper care and treatment of the compensable injury or disease.  In all other cases, consent may be given upon a showing of good cause for change.[11]

The parties dispute whether Scott's change-of-physician request should be evaluated under § 907(b)'s "desirable or necessary in the interest of the employee" standard or the "good cause" standard in § 907(c)(2).  The district director approved Scott's change-of-physician request because the director concluded that the change was "desirable or necessary" to further Scott's

---

[7] *Id.* § 907(b); 20 C.F.R. § 702.403.

[8] 33 U.S.C. § 907(c)(2).

[9] 33 U.S.C. § 907(b); 20 C.F.R. § 702.406(b) ("The district director . . . may order a change of physicians or hospitals when such a change is found to be necessary or desirable . . . ."); *see also* 20 C.F.R. § 702.407(c) (entrusting "[t]he determination of whether a change of physicians . . . should be made or is necessary" to the district director).

[10] 33 U.S.C. § 907(b).

[11] *Id.* § 907(c)(2); *see also* 20 C.F.R. § 702.406(a) (requiring consent to a change of physician when a specialist is needed and permitting consent "[i]n all other cases . . . upon a showing of good cause for change").

medical interests.  Ports America argues that § 907(b) applies only when an employee does not request the change of physician.  Requests initiated by the employee, it contends, are governed by the good cause standard in § 907(c)(2).  Although the district director's choice of legal standards for evaluating Scott's proposed change of physician is subject to de novo review, we review the district director's decision allowing Scott to change physicians for abuse of discretion.[12]

Because the district director's decision to allow Scott to seek treatment from another physician was not an abuse of discretion under either the "desirable or necessary" or "good cause" standard, we need not decide which applies in this case.  We assume, *arguendo*, that the more demanding "good cause" standard applies.[13]

Precedent from this court interpreting § 907(d) establishes that when an employer's physician tells an employee "he is recovered from his injury and requires no further treatment" the employee "has, in effect, been refused treatment by the employer."[14]  Ports America urges that Dr. Steiner did not refuse to treat Scott because he scheduled a follow-up visit in August 2015 and ordered an MRI.  Viewed in the context of Dr. Steiner's repeated statements that Scott required no further treatment, had reached maximum medical improvement, and should return to work without any restrictions in spite of Scott's continued complaints of pain, scheduling a follow-up visit does not refute the evidence supporting Scott's request to obtain an assessment and

---

[12] *See* 5 U.S.C. § 706.

[13] *See NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969) (stating that remand would be "an idle and useless formality" when the substance of the agency decision was correct).

[14] *Atl. & Gulf Stevedores, Inc. v. Neuman*, 440 F.2d 908, 911 (5th Cir. 1971); *see also Roger's Terminal & Shipping Corp. v. Dir., Office of Worker's Comp. Programs*, 784 F.2d 687, 693 (5th Cir. 1986).

opinion from Dr. Bostick, who found that Scott had an altered gait and concluded that Scott should not return to work.  Dr. Steiner had prescribed no additional medication for pain, restrictions at work, nor continued therapy.  Ports America represented to the district director that the August 20 check-up was a "final follow-up" and that Dr. Steiner had "nothing further to offer [Scott]."  While Ports America's position has changed on appeal, its previous interpretation of Dr. Steiner's reports as the end of treatment further supports a conclusion that the district director did not abuse his discretion.

The bounds of § 907(c)(2)'s good cause standard, coupled with the inherent discretion bestowed on district directors to supervise the cases within their charge,[15] suggest the district director had wide latitude to decide whether to grant Scott's request.  The district director's order allowing Scott to obtain a new physician and requiring Ports America to pay for Dr. Bostick's services was based on good cause and therefore was not an abuse of discretion.

## B

We also agree with the Board's conclusion that the district director did not abuse his discretion in ordering an IME for Scott and requiring Ports America to pay for it.  Section 907(e) provides that "[i]n the event that medical questions are raised in any case," district directors may order that the employee be examined by an independent medical professional of the director's choosing.[16]  The statute is clear that district directors have discretion to assign the cost of the IME to the employer.[17]  The only issue in Scott's case is whether there was a "medical question" about Scott's injury within the meaning of § 907(e).  We review the issue de novo,[18] deferring to the OWCP Director's

---

[15] *See, e.g.*, 20 C.F.R. § 702.407(c).

[16] 33 U.S.C. § 907(e).

[17] *Id.*

[18] *See* 5 U.S.C. § 706; *see also Augillard v. Pool Co.*, 31 BRBS 62 at *2 (Ben. Rev. Bd. 1997).

interpretation of the LHWCA according to "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade."[19]

Based on this review, we conclude that there is a medical question. The regulations implementing § 907(e) clarify that medical questions about the "appropriate diagnosis, extent, effect of, appropriate treatment, and the duration of any such care or treatment," may justify an IME.[20]

As both the district director and Board determined, Dr. Steiner and Dr. Bostick disagreed about whether Scott's gait was normal and whether he needed additional treatment or should return to work. The disparity in views about the proper duration and scope of Scott's treatment provides adequate justification for the district director's decision to order an IME. Despite Ports America's argument to the contrary, it is irrelevant that Dr. Steiner and Dr. Bostick were both chosen by Scott as medical providers. The statute does not predicate IMEs on a dispute between a physician hired by the employer and the patient's chosen physician. It requires only that there be a "medical question[],"[21] and the disagreement between Steiner and Bostick raises such a question. The district director properly concluded that the disagreement between the two physicians was a medical question. The director's decision to order an IME and impose the costs on Ports America was not an abuse of discretion.

## C

Ports America contends that upholding the Board's affirmance of the district director's order will lead to "physician shopping." We are skeptical.

---

[19] *Pool Co. v. Cooper*, 274 F.3d 173, 177 (5th Cir. 2001) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001)).

[20] 20 C.F.R. § 702.408.

[21] 33 U.S.C. § 907(e).

No. 16-60835

The Act's dispute resolution procedures are designed to prevent employees from submitting unfounded change-of-physician requests. The district director, who by design is familiar with the details of the case and the parties involved, is empowered with discretion to review the facts and permit employees to change physicians as warranted.[22] If there are unresolved medical questions, the director can also order an IME by an unbiased physician.[23] The district director serves as a gatekeeper, separating frivolous requests from legitimate ones.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of the Board.

---

[22] 33 U.S.C. § 907(b); 20 C.F.R. §§ 702.406, 407(c).
[23] 33 U.S.C. § 907(e); 20 C.F.R. § 702.408.